816 F.2d 1104
 43 Fair Empl.Prac.Cas. 1286,
43 Empl. Prac. Dec. P 37,093,
43 Empl. Prac. Dec. P 37,127
Irvin BEAUFORD, Plaintiff-Appellant,
v.
SISTERS OF MERCY-PROVINCE OF DETROIT, INC., and Clark
Bowman, Sr., Defendants- Appellees.
 Nos. 85-1477, 85-1631.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 10, 1986.
Decided April 22, 1987.
Rehearing and Rehearing En Banc Denied June 9, 1987.
 
 Gary A. Benjamin (argued), Detroit, Mich., for plaintiff-appellant.
 David G. Chardavoyne (argued), Bodman, Longley & Dahling, Detroit, Mich., for defendants-appellees.
 Before KRUPANSKY and RYAN, Circuit Judges, and EDWARDS, Senior Circuit Judge.
 KRUPANSKY, Circuit Judge.
 
 
 1
 The plaintiff Irvin Beauford (the plaintiff) appealed the district court's order granting the defendants' motion for judgment notwithstanding the jury verdict and, in the alternative, conditionally granting their motion for a new trial in this suit alleging race discrimination brought pursuant to 42 U.S.C. Sec. 1981.
 
 
 2
 The record below focused on three alleged instances of racial discrimination. The plaintiff, a black male, was initially employed as a boiler operator in June of 1978 at the high school campus administered by the defendant Sisters of Mercy (the Sisters). In September of 1982, as a result of a vacancy, the position of supervisor of boiler room facilities became available. Defendant Clark Bowman, Sr. (Bowman), the director of building operations and maintenance, appointed Marvin Horton (Horton), a white male with less employment seniority than the plaintiff, to the position. Horton assumed this position in addition to his then-existing duties as maintenance supervisor over plumbing, kitchen, swimming pool, and garage activities. Bowman testified that at the time of Horton's appointment he had considered assigning the plaintiff to the vacancy, but imposed economic constraints dictated a reduction of supervisory personnel through consolidation of duties. The testimony presented at trial was conflicting on the issue of the relative qualifications of Horton and the plaintiff for the supervisory position and disclosed that Horton had supervised the plumbing and automobile maintenance departments with mechanical engineering experience in the fields of plumbing, heating, and air conditioning, whereas the plaintiff's qualifications consisted of his experience as a duly licensed boiler operator.[1]
 
 
 3
 The second charged act of purposeful discrimination occurred on November 8, 1982. On that date while working his assigned midnight shift, the plaintiff was startled by a person peering into a boiler room window. During his investigation of what appeared to be an intruder, the plaintiff stumbled over a gutter, causing injury to his back. The plaintiff's inspection disclosed that Bowman's son, Clark Bowman, Jr. (Bowman, Jr.), also an employee of the facility, together with four other employees, had been assigned to patrol the entire campus after nightfall by Tom Parker (Parker), chief of security at the high school, in an effort to stem trespassing and vandalism. The plaintiff subsequently filed a written complaint with Bowman, Sr., and Sister Mary Kelly, Bowman, Sr.'s supervisor, characterizing the occurrence as a "spying" incident. Parker had not instructed Bowman, Jr., or any of the other four employees to spy on the plaintiff or any other individual.
 
 
 4
 As a result of the back injury suffered by the plaintiff during the night of November 8, 1982, he did not work through May of 1983, during which period he received workers' compensation benefits. Upon his return to his employment in May of 1983, Horton placed him on the day shift, although the plaintiff had previously worked the midnight shift, which had permitted him to work a second job with the City of Detroit. Another employee, Gunnar Bjarnesen (Bjarnesen), had been assigned to the midnight shift during the plaintiff's extended sick leave. The plaintiff charged that the shift realignment constituted another instance of discrimination which was imposed in retaliation for having filed a civil rights charge as a result of the November 1982 promotion of Horton. The record reflected that the plaintiff had terminated his employment with the City of Detroit and had not worked for it since November of 1982, although he testified that he intended to eventually return to that job. Horton testified that he was unaware of the plaintiff's employment status with the City at the time he assigned the plaintiff to the day shift and that he was concerned that assistance be available for the plaintiff should he require it in light of his back injury. The plaintiff worked the day shift for a period of one day, May 9, 1983, after which date he failed to return to his employment at either the Sisters' facility or the City of Detroit. The record further disclosed that at or about that time the plaintiff was awarded Social Security disability benefits, which he has continued to receive. In addition to facts relevant to the foregoing incidents, the plaintiff at trial adduced evidence of isolated and unrelated racial epithets that he charged had been directed against certain black employees other than himself and that Bowman's children were permitted to use the swimming pool to the exclusion of other employee family members. Two former black employees offered factually unsupported opinions that their discharges had also been discriminatory.
 
 
 5
 Upon conclusion of the trial, the jury returned a verdict for the plaintiff and awarded him $1 as nominal actual damages and $150,000 in punitive damages against each defendant for an aggregate verdict of $300,002.[2] The defendants subsequently filed a motion for judgment notwithstanding the verdict (judgment NOV), new trial, or remittitur, asserting that the evidence was insufficient as a matter of law to support the jury's verdict against the defendants for either intentional discrimination or punitive damages. After a hearing, the district court granted the defendants' motion for judgment NOV and conditionally granted a new trial and entered judgment for the defendants. The plaintiff subsequently appealed to this court.
 
 
 6
 This court, upon appeal, is confronted with determining whether there was insufficient evidence in the record to present a question of fact for the jury's consideration thereby warranting the grant of judgment NOV. Morelock v. NCR Corp., 586 F.2d 1096, 1104 (6th Cir.1978), cert. denied, 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979). The question is one of law for the reviewing court to resolve de novo. Id. at 1104-05. In considering whether the evidence is sufficient to support the verdict, this court may neither weigh the evidence, pass on the credibility of witnesses, nor substitute its judgment for that of the jury. Rather, the evidence must be viewed in the light most favorable to the party against whom the motion is made, drawing from the evidence all reasonable inferences in that party's favor. Id. at 1104. A motion for judgment NOV is improper unless the evidence is such that there can be but one reasonable conclusion as to the proper verdict. National Polymer Products, Inc. v. Borg-Warner Corp., 660 F.2d 171, 177-78 (6th Cir.1981).
 
 
 7
 To state a claim under Sec. 1981, the plaintiff must prove that the defendant discriminated against him in employment, namely, that the defendant treated him differently than its white employees, and that the disparate treatment was the result of a discriminatory purpose or intent. See General Building Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 388-89, 102 S.Ct. 3141, 3148-49, 73 L.Ed.2d 835 (1982); Reynolds v. Humko Products, 756 F.2d 469, 472 (6th Cir.1985); Smith v. Pan Am World Airways, 706 F.2d 771, 773 (6th Cir.1983). The essential factual inquiry in such a case is whether the defendant intentionally discriminated against the plaintiff. See U.S. Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).
 
 
 8
 Mindful of the admonition imposed by existing precedent, this court is constrained to conclude that the district court erred in granting judgment NOV as it related to the plaintiff's claim of intentional discrimination premised upon defendants' promotion of Horton in lieu of the plaintiff. The district court's conclusion that the plaintiff failed to adduce evidence to establish that he was qualified for the supervisory position and thus failed to present a prima facie case of intentional discrimination was error. In essence, the district court reasoned that the plaintiff failed to produce evidence sufficient to permit the jury to reasonably conclude that the plaintiff's proffered qualifications for the position, i.e., a boiler operator's license and greater seniority, were relevant factors in the defendants' promotional considerations. However, this court's examination of the record at trial disclosed that the testimony was conflicting as to the significance of a boiler operator's license, the relative qualifications of Horton and the plaintiff, and the circumstances attendant to the promotion of Horton. It would appear that the district court, in the course of ostensibly reviewing the evidence in the instant matter within the McDonnell Douglas framework, considered the weight to be assigned to the conflicting motivations ascribed to the employer for its actions. The question of discriminatory motivation is one of fact, and factual questions are traditionally within the domain of the jury. Additionally, circumstantial evidence is sufficient to support a finding of discriminatory intent. Aikens, 460 U.S. at 714 n. 3, 103 S.Ct. at 1481 n. 3. In sum, this court is of the opinion that the jury could have permissibly inferred discriminatory intent to Bowman from the circumstantial evidence presented at trial, albeit conflicting, in his promotion of Horton to the supervisory position in question rather than the plaintiff.
 
 
 9
 This court further concludes, however, that the district court's judgment NOV was appropriate with regard to the plaintiff's claim of discrimination premised upon the alleged "spying" incident and the alleged incident of retaliation arising from the plaintiff's assignment to the day rather than the night shift. The plaintiff produced no evidence whatsoever that he was treated differently from white employees or singled out for surveillance or any other form of "spying," nor did he indicate at the time that he complained of the incident that he believed it to be racially motivated. Moreover, the defendants' articulated legitimate, nondiscriminatory reason for the impromptu patrol as designed to curb vandalism remained unrebutted at the conclusion of all of the evidence. Similarly, the plaintiff failed to rebut the defendants' articulated reasons advanced in support of his shift assignment. Finally, the plaintiff's evidence of isolated racial incidents or epithets or purported disparate treatment of certain other black employees was wholly unsupported by facts and was not connected with any asserted unlawful conduct regarding the plaintiff.[3]
 
 
 10
 In addition to moving for judgment NOV on the issue of intentional discrimination, the defendants charged that the evidence was insufficient as a matter of law to support an award of punitive damages. They correctly argued that a plaintiff who proves a cause of action under Sec. 1981 may recover punitive damages where the plaintiff is entitled to an award of compensatory damages, even if nominal, only under circumstances where the "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). See also Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 460-61, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975); Burkhart v. Randles, 764 F.2d 1196, 1201-02 (6th Cir.1985); Stengel v. Belcher, 522 F.2d 438, 444 (6th Cir.1975), cert. dismissed, 429 U.S. 118, 97 S.Ct. 514, 50 L.Ed.2d 269 (1976). The imposition of punitive damages in civil rights actions has generally been limited to cases involving egregious conduct or a showing of willfulness or malice on the part of the defendant. Wolfel v. Bates, 707 F.2d 932, 934 (6th Cir.1983).
 
 
 11
 In the absence of any evidence of egregious conduct, willfulness, or malice on the part of the defendants, the district court correctly concluded that it was improper to permit the jury to find that either Bowman or the Sisters acted with evil intent or callous, reckless, or egregious disregard of the plaintiff's federal rights, assuming arguendo that their conduct constituted purposeful discrimination in the first instance. After scrutinizing the record, this court concludes that, while the plaintiff presented sufficient evidence to submit to the jury the issue of intentional discrimination with respect to the Horton promotion, no testimony was adduced evidencing the requisite malice or reckless or callous indifference of an egregious character on the part of either defendant as to support a jury verdict imposing punitive damages. Accordingly, the defendants were properly entitled to judgment NOV on the plaintiff's claim for punitive damages.[4]
 
 
 12
 Having concluded that the district court's grant of judgment NOV was appropriate as it related to the claim for punitive damages and in the absence of any claim for compensatory damages beyond the nominal actual damages awarded by the jury, this court has no occasion to consider the district court's conditional grant of a new trial, based upon the charged excessive punitive damage award, despite this court's decision to reverse the district court's grant of judgment NOV arising from the plaintiff's claim of discrimination anchored in the Horton promotion. The court observes that Rule 50 provides that, in the event that a motion for a new trial has been conditionally granted by the district court and the grant of judgment NOV is subsequently reversed on appeal, as here, the new trial will proceed unless the appellate court has otherwise ordered, and in an appropriate case the appellate court may also reverse the conditional grant of a new trial and direct that judgment be entered upon the jury verdict. Fed.R.Civ.P. 50(c)(1) & adv. comm. note. The instant case therefore will be remanded to the district court to enter judgment for the plaintiff consistent with the verdict of the jury as to the defendants' liability for discrimination, but only as to nominal damages and not as to punitive damages.
 
 
 13
 Accordingly, the judgment of the district court is REVERSED insofar as it entered judgment for the defendants notwithstanding the jury verdict with respect to the defendants' liability on the plaintiff's claim of discrimination in violation of Sec. 1981, AFFIRMED insofar as it entered judgment for the defendants notwithstanding the jury verdict with respect to the defendants' liability for punitive damages in any amount, and REVERSED insofar as it granted the defendants' conditional motion for a new trial, and the case is REMANDED to the district court with directions to enter JUDGMENT for the plaintiff consistent with the jury verdict but only insofar as the verdict determined that the defendants were liable for unlawful discrimination against the plaintiff and only insofar as the verdict awarded to the plaintiff nominal actual damages and not punitive damages.
 
 
 14
 RYAN, Circuit Judge, concurs in the result.
 
 
 15
 GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge, dissenting.
 
 
 16
 This is a strange case. It might be called the "face in the window" case since one of the episodes relied upon by this black plaintiff-appellant concerned a white face which appeared in the nighttime in the basement window of the power house where he was then employed. The face disappeared without identification or explanation. Plaintiff was injured seeking to chase and identify the face. There is testimony in this record that the face belonged to a member of an all white surveillance patrol which had been initiated by defendants without notice to employees.
 
 
 17
 Plaintiff also claimed intentional race discrimination in two other episodes. One such pertained to defendants' failure to promote him for a position for which he had seniority over the white person who got the job. The other claim relates to an allegedly discriminatory change of his employment shift. As the majority opinion points out in detail, there were explanations proffered by the defendants concerning each of these episodes from which the jury could have found the facts in favor of the defendants on the basis of explanations of a nondiscriminatory character.
 
 
 18
 The case is before us, however, because it was tried before a jury which obviously found the disputed facts in favor of the plaintiff. The plaintiff during pretrial proceedings had voluntarily waived his claim for compensatory damages as barred by the exclusive remedy provision of the Michigan workers' compensation statute. The jury therefore awarded plaintiff only $1.00 in nominal damages against the two defendants. The jury, however, also awarded $150,000 in punitive damages against each defendant for an aggregate verdict of $300,002.
 
 
 19
 Contrary to the majority opinion, I find factual support in this record for the jury's award of damages based upon race discrimination and punitive intent. Our question, of course, is not whether we would have decided disputed issues of fact as did the jury, our question is whether or not the jury had facts before it sufficient to support its judgment.
 
 
 20
 In my view, the majority opinions would allow the District Court to substitute its view of the disputed facts for the view taken by the jury. This is not the role of either the District Court or the Court of Appeals. See generally Anderson v. City of Bessemer City, North Carolina, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).
 
 
 
 [1]
 The plaintiff filed a state civil rights complaint as a result of Horton's promotion; however, no right to sue letter was ever issued as a result of his action
 
 
 [2]
 The plaintiff during pretrial proceedings voluntarily waived his claim for compensatory damages as barred by the exclusive remedy provision of the Michigan workers' compensation statute, which waiver was not placed in issue on appeal
 
 
 [3]
 The plaintiff's assignment of error charging that the defendants failed at the conclusion of all the evidence to renew their motion for a directed verdict, which the district court had earlier taken under advisement, was not presented to the district court despite ample opportunity to do so in the post-trial proceedings. A court does not view favorably the raising of such an issue for the first time on appeal. See Halsell v. Kimberly-Clark Corp., 683 F.2d 285, 294-95 (8th Cir.1982), cert. denied, 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983); Bannert v. American Can Co., 525 F.2d 104, 111 (6th Cir.1975), cert. denied, 426 U.S. 942, 96 S.Ct. 2662, 49 L.Ed.2d 394 (1976); Moran v. Raymond Corp., 484 F.2d 1008, 1011-14 (7th Cir.1973), cert. denied, 415 U.S. 932, 94 S.Ct. 1445, 39 L.Ed.2d 490 (1974). Accordingly, the plaintiff's objection in this respect was waived in light of the proceedings in the court below
 
 
 [4]
 The district court's observations contained in its memorandum opinion regarding the insufficiency of the evidence bearing upon proof of malice or reckless or callous disregard necessary to an award of punitive damages, although incorporated into its disposition of the defendants' conditional motion for a new trial, are properly construed as initially bearing upon its grant of the defendants' motion for judgment NOV and only secondarily if at all to the defendants' conditional motion for a new trial. In any case, however, it clear that the defendants' motion for judgment NOV was expressly premised upon the insufficiency of the evidence at trial to support either liability for intentional discrimination in the first instance or liability for punitive damages. Based upon the conclusions stated in the text, the defendants were properly entitled to judgment NOV on the plaintiff's claim for punitive damages