Joyce WORKMAN, Plaintiff–
Appellee/Cross–
Appellant,

v.

FRITO–LAY, INC., Defendant–
Appellant/Cross–Appellee.

Nos. 97–5721, 97–5843.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 18, 1998.

Decided Jan. 15, 1999.

---

Keith D. Frazier (argued and briefed), Rhonda M. Taylor (briefed), Ogletree, Deakins, Nash, Smoak & Stewart, Nashville, TN, for Appellant.

Jude A. White (argued), David P. Canas (briefed), Morris Reid Estes, Jr. (briefed), Stewart, Estes & Donnell, Nashville, TN, for Appellee.

Before: GUY, NELSON, and MOORE, Circuit Judges.

MOORE, J., announced the judgment of the court and delivered an opinion for the court, in which RALPH B. GUY, JR. and DAVID A. NELSON, JJ., concurred as to all

issues except the retaliation issue. RALPH B. GUY, JR., J. (p. 469), delivered a separate opinion, in which DAVID A. NELSON, J., concurred, which constitutes the opinion of the court on the retaliation issue.

## OPINION

MOORE, Circuit Judge.

The plaintiff, Joyce Workman, suffers from irritable bowel syndrome and argues that her termination from Frito–Lay, Inc., was in violation of the Americans with Disabilities Act ("ADA") because the company failed to accommodate her and eventually fired her because of her disability. She also argues that she was retaliated against for filing an Equal Employment Opportunity claim and seeks punitive damages. Both parties now appeal the decisions reached below, which fall into essentially three categories: decisions of the district court at trial; the jury verdict; and other decisions of the district court. For the reasons discussed below, we affirm the district court's decisions at trial and we uphold the jury verdict in all respects. However, we remand to the district court for a correction to the judgment on the ADA claim and for a determination of the appropriate accommodation, if any, to be provided by Frito–Lay.

## I. FACTS

Joyce Workman began working for Frito–Lay in 1977. J.A. at 309 (Trial Tr. at 129).[1] The last position she held was as a packer and as a floor person. As a packer on Line Two, she packed and inspected cookies, and as a floor person on Line Three, she swept around the machines, checked the metal detector, did "rewraps" and replaced the packers on the line for two hours a day. J.A. at 310–11. Because the lines were not operational every day (they varied with the orders placed for the different types of cookies they produced), she worked full-time in the corresponding position for whichever line was operational. J.A. at 367. According to Workman, her duties on Lines Two and Three prior to her leave of absence in March 1993 were divided "half and half." J.A. at 342.

Workman has a spastic colon, which is a subset of irritable bowel syndrome. It is a painful condition, which manifests itself occasionally in bouts of constipation and diarrhea, and one doctor likened the spasms to a "charlie horse" in her colon. J.A. at 233–34. She has taken medication for the condition that helps relax the colon and keep it from knotting. She has had the condition all her life and has been treated by doctors for the past ten years. J.A. at 313–15. Until approximately June 1993, she regulated and controlled the effects of her condition through use of an enema each morning before work. J.A. at 236, 256. In 1993, Workman had a number of medical difficulties and took a leave of absence first in March to undergo surgery for endometriosis, and then again in May in order to undergo gall bladder surgery. Following this surgery, the use of enemas became difficult, and Workman began the process of "retraining" her bowels so that she could stop using mechanical aids and return her system to a normal process. J.A. at 317–21. At first during the retraining, she had to defecate between ten and fourteen times a day, but by the time she was ready to return to work, her restroom use was at one to four times a day, within the "normal" range, according to her doctor. J.A. at 322–23.

Both parties agree that Workman began a dialogue with the Human Resources Manager, Mark Paschal, in September 1993 about returning to work, and this dialogue continued through December 1993, when she was effectively terminated. According to the defendant, Workman presented a letter on September 23 from one of her physicians, releasing her to go to work and explaining that her condition was improving and would continue to improve, but that it was important for Workman to be able to use the restroom when the urge occurred. J.A. at 322, 386. Although released by one doctor, Workman was not fully released to go back to work because she was seeing others. Nonetheless, the defendant claims that Paschal began ex-

---

**1.** Unless otherwise indicated, the Joint Appendix citation is to the trial transcript, which comprises the bulk of the Joint Appendix.

ploring ways to accommodate Workman upon her return. Between September and December, they met at least twice in person and spoke numerous times by telephone. Paschal received letters from two other physicians in November 1993, which reiterated that Workman's condition was improving, but that she should be afforded access to the restroom as needed. Paschal's understanding was that neither Workman nor her doctors could predict how often or when Workman would have to be relieved from the line to go to the bathroom. He contends that Workman's statements conflicted with those of her doctors on this issue and that she claimed to need an accommodation in place "just in case" it became important for her to leave the line. Paschal decided to try to accommodate the worst-case scenario of Workman needing to leave the line several times an hour, and determined that no accommodation for that scenario was available. The two discussed a number of options, and none were deemed acceptable to both Workman and to Frito–Lay. On December 16, Workman came to the plant with a full work release and asked to be returned to work. According to Paschal, he told her that he was scheduled to meet with her the next day to discuss it, but she never returned, and consequently he sent her a termination letter on February 10, 1994.

Workman claims that she never *demanded* an accommodation during these discussions, but just wanted to be allowed to go back to work under the terms in place before she left; that is, workers would replace one another on the line whenever possible on an as-needed basis. She admitted that she could not precisely predict when she would need to leave the line, but believed that the existing company policy would suffice. She says she suggested a number of accommodations, all of which were rejected by Paschal. According to Workman, his bottom line was that if she could not predict when she would need to use the restroom, or confine the activity to her two twenty-minute breaks, she could not return to work. She claims that at one point he offered her a week-long trial period, but then reneged on this offer when she accepted the arrangement.

Workman also explains that she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in November because she felt she was getting the run-around from Paschal. Although she had hoped this would spur him to act, it had the opposite effect, and he became hostile and unwilling to cooperate. She says that on December 16 when she returned to the plant, Paschal told her that she no longer had a job.

## II. PROCEDURAL HISTORY

Workman filed the complaint in this action on December 14, 1994, alleging both ADA and Tennessee Human Rights Act ("THRA") violations. On January 26, 1995, the district court granted in part the defendant's motion to dismiss the THRA claims. Subsequently, the defendant moved for summary judgment, the plaintiff responded, and the magistrate judge issued her Report and Recommendation on September 25, 1996, wherein she recommended the motion be granted on the THRA claim and denied on the ADA claim. On October 17, 1996, the district court entered its Order adopting the Report and Recommendation.

The ADA claim proceeded to trial before a jury on October 25, 28, and 29, 1996. The jury returned a verdict in favor of the plaintiff on liability, and then, after being charged on compensatory damages, found that plaintiff was entitled to none. The district judge decided as a matter of law that Workman was not retaliated against and could make no case for punitive damages; hence, those claims did not go to the jury. The parties then briefed the issue of equitable remedies to the court; on April 10, 1997, the district court issued a memorandum, entered a judgment in the amount of $77,140.80 for back pay and benefits, and ordered reinstatement of the plaintiff in the position of floor person at the level of seniority she would have attained had her employment not been interrupted and required the defendant "to make the necessary accommodations for her condition." J.A. at 160 (Judgment).

Each party filed two post-trial motions. Taken together, these motions make essentially the same arguments that are put forth

in the briefs on appeal. The district court entered its Order on May 15, 1997, wherein it denied each party's motion for judgment as a matter of law or for a new trial, and granted in part each party's motion to alter or amend the judgment. Specifically, the court changed the phrase "make the necessary accommodations for her condition" in the original judgment to "make reasonable accommodations for her irritable bowel syndrome condition without requiring her to defecate in her undergarment or utilize a sanitary device such as an adult diaper." J.A. at 176–77 (Order).

### III. ANALYSIS

We address in turn the three categories of claims made by the parties. First, both parties take issue with one or more of the district court's trial decisions: Frito–Lay disputes several aspects of the jury charge, while Workman disputes decisions to exclude documentary evidence. Second, both parties take issue with the jury verdict on the merits, arguing that no reasonable jury could have reached the decision reached by this jury. Finally, Frito–Lay takes issue with two aspects of the judgment as rendered by the district court, and Workman argues that the directed verdict against her on the retaliation and punitive damages claims was improper.

### A. District Court's Trial Decisions

■■■ Frito–Lay makes three arguments about the charge given to the jury at the end of the trial. First, the Company complains that the district court used a general verdict form[2] rather than either a special verdict

under FED.R.CIV.P. 49(a) or a general verdict with interrogatories under Rule 49(b). The language of both prongs of the rule is explicitly permissive, which leaves the decision within the sound discretion of the trial court. There is some disagreement in this circuit as to our standard of review. *Compare Bills v. Aseltine,* 52 F.3d 596, 605 (6th Cir.1995) (reviewing the decision for abuse of discretion) (citing *Portage II v. Bryant Petroleum Corp.,* 899 F.2d 1514, 1520 (6th Cir.1990)), *cert. denied,* 516 U.S. 865, 116 S.Ct. 179, 133 L.Ed.2d 118 (1995), *with Jarrett v. Epperly,* 896 F.2d 1013, 1020–21 (6th Cir.1990) ("[T]he form of jury verdict is within the discretion of the trial judge, and is not ordinarily reviewable.") (citing *Lummus Industries, Inc. v. D.M. & E. Corp.,* 862 F.2d 267, 273 (Fed. Cir.1988)).[3] Generally matters that are committed to the sound discretion of the district court are reviewed by the court of appeals for abuse of discretion. We need not resolve the issue here, however, because even applying the less deferential standard to review the decision, we conclude that the district judge did not abuse his discretion in choosing to submit a general verdict form to the jury. We note, however, that the complicated nature of ADA claims makes special interrogatories worth consideration by district courts: in this case, they might well have shed light on how the jury reached its verdict as it made its way through ADA law (for instance, which prong of "disability" applied) and thereby could have aided the district court, as well as this court, in reviewing the verdict. Moreover, Rule 49 seems to have been implemented with these purposes in mind.[4]

---

**2.** The jury was given thirty-one pages of instructions on the law and then asked to answer the following question: "Did the defendant discriminate against the plaintiff by terminating her on the basis of her disability, in violation of the Americans with Disabilities Act?" by marking yes or no. J.A. at 82–112 (Jury Charge), 113 (Verdict Form).

**3.** The Wright and Miller treatise comes close to saying the Rule 49 decision is unreviewable: regarding Rule 49(a), the special verdict procedure, it indicates that "[o]vercrowded courts of appeals should leave this detail of trial administration to the district judges and refuse even to consider a claim of abuse of discretion in this

regard," 9A CHARLES ALAN WRIGHT AND ARTHER R. MILLER, FEDERAL PRACTICE AND PROCEDURE CIVIL 2D § 2505 (2d ed.1995); likewise, "[t]he decision whether to use a general verdict accompanied by special interrogatories, as authorized by Rule 49(b), similarly is committed to the discretion of the trial judge, the exercise of which basically is unreviewable." *Id.* at § 2511.

**4.** "Use of a general verdict accompanied by written interrogatories requires the jury to give close attention to the more important issues in the case, and its answers serve as a check on the propriety of the general verdict." 9A WRIGHT AND MILLER, *supra* note 3, § 2511.

■ Frito–Lay next argues that the district court erroneously charged the jury on issues that had been resolved by the magistrate judge and adopted by the district court prior to trial: specifically, whether a continuous presence on the production line is an "essential function" of Workman's job, and whether she could perform this job without an accommodation. At the defendant's objection, the district judge explained that he adopted only the conclusions of the magistrate judge's report and not its findings of fact. J.A. at 414 (Tr. Trial at 234). The district court used these words in its order of adoption: "The Court has independently reviewed the Magistrate Judge's findings and conclusions, as well as the objections and the entire record. The objections are overruled. The conclusions of the Magistrate Judge in the Report and Recommendation are adopted and approved." R: 44 (Order). Typically, a district court will adopt the "findings of fact and conclusions of law"[5] in a magistrate judge's report; significantly, the district judge adopted the conclusions alone. The magistrate judge's report recommended granting summary judgment to the defendant on the state law claim and sending the ADA claim to trial, and it is these conclusions that the court adopted. The federal and state statutes use different language, and the ADA utilizes several particular terms of art, including "essential functions" and "reasonable accommodation," which are properly before a jury deciding an ADA claim. In contrast to the THRA, an employer may still violate the ADA if the employee can perform the essential functions of her job *with* a reasonable accommodation. Such a determination required the type of instructions given by the district judge; in any case, he did not abuse his discretion by providing them.

■ Frito–Lay also complains that the district court neglected to offer an instruction to the jury on its defense of "good faith." In fact, the jury instructions include a charge on the affirmative defense of "good faith," J.A. at 94, 100 (Jury Charge at 13, 19), and in a later brief, the defendant recharacterizes its objection to the instruction as failing to mention "the *effect* that such a finding by the jury would have on the relief available to Plaintiff." Third Br. of Defendant–Appellant at 8 (emphasis in original). That is, the defendant contends that a finding of good faith bars an award of compensatory damages. The fact that the jury found Frito–Lay liable necessarily precludes the possibility that they adopted the Company's good faith defense, however, because it is a defense to liability. In addition, the jury did not award compensatory damages, making the error, if any, harmless and the effect about which defendant was concerned a non-issue. This court need only determine "whether the [jury] charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury" on this issue, *see Bills v. Aseltine,* 52 F.3d at 606 (internal quotation omitted), and after reviewing the charge as a whole, we conclude that it does.

■ Workman for her part complains about two district court decisions to exclude documents from trial. First, the district court decided to exclude as untimely documents referencing certain benefits to which Workman is allegedly entitled, because the documents were not turned over in discovery but instead produced the day before trial. J.A. at 455. We hold that the district judge did not abuse his discretion by refusing to admit them at that late date.[6] The second set of documents were offered in support of Workman's claims for retaliation and punitive damages. Because the opinion of the court resolves these claims adversely to Workman (*see post*), there will be no trial on

---

5. *See, e.g., Elliott v. Thompson,* 599 F.2d 767, 769 (6th Cir.1979) (" ... the findings and recommendations of the magistrate to this effect should be and the same are hereby adopted as the findings of fact and conclusions of law of this Court ...."), *cert. denied,* 444 U.S. 932, 100 S.Ct. 278, 62 L.Ed.2d 190 (1979); *Wedding v. Wingo,* 483 F.2d 1131, 1132 (6th Cir.1973) ("The Court ... adopted the findings of fact and conclusions of law of the Magistrate as his own ...."), *aff'd,*

418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974); *Ingram v. Richardson,* 471 F.2d 1268 (6th Cir.1972) ("[T]he District Court[ ] ... adopted the Magistrate's findings of facts and conclusions of law....").

6. Therefore, his refusal to alter or amend the judgment as to equitable damages based on those documents is also not improper.

them and it is unnecessary to reach the issue here.

### B. The Jury Verdict

 There are four basic arguments, three by Frito–Lay and one by Workman, that the verdict should be overturned, or in the alternative a new trial should be granted, on issues decided by the jury on the merits. First, Frito–Lay argues that no reasonable jury could have found that Workman was disabled under any prong of the ADA definition.[7] A necessary predicate to the jury's decision for Workman on liability is that she has a disability as defined by the ADA. The ADA defines disability as (a) a physical or mental impairment that substantially limits one or more major life activities; (b) a record of such an impairment; or (c) being regarded as having such an impairment. 42 U.S.C. § 12102(2)(A)-(C). The plaintiff can proceed to trial without deciding under which prong she is covered. *See, e.g., Doane v. City of Omaha,* 115 F.3d 624 (8th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 693, 139 L.Ed.2d 638 (1998); *Harris v. H & W Contracting Co.,* 102 F.3d 516 (11th Cir.1996). No one disputes that Workman's irritable bowel syndrome, or spastic colon, is an impairment, but the parties disagree about whether it actually "substantially limits" her in a major life activity and/or whether Frito–Lay regarded it as so limiting her. Given the evidence put forth during a three-day trial from which a jury could draw a number of conclusions, we are not prepared to hold as a matter of law that Workman is not disabled under the ADA, nor that the defendant is entitled to a new trial on the issue.

Regarding the first prong, actual disability, the jury could have decided that controlling one's bowels is a major life activity and that Workman's condition sometimes left her "[s]ignificantly restricted as to the condition, manner or duration under which [she could] perform a particular major life activity as compared to … the average person in the general population" 29 C.F.R. § 1630.2(j)(1)(ii), if they chose to credit evidence that she needed to be free to go to the bathroom whenever she felt the urge as an important element of her "retraining."[8] Under the third prong, "regarded as" having a disability, the defendant correctly contends that a finding on this basis would obviate the Company's obligation to reasonably accommodate Workman. *See* 29 C.F.R. § 1630.2(*l*)(1)-(3); First Br. of Defendant–Appellant at A–3 (EEOC Training Manual). However, Workman was fired. If Frito–Lay regarded her as disabled and would not reinstate her despite the fact that she did not need an accommodation, they would be liable for discrimination under the ADA. If the jury credited Workman's testimony at trial, and the testimony of some Frito–Lay employees that temporarily replacing people on the line was regularly done (i.e., not a special accommodation), then they could have found for Workman under this prong. Undoubtedly, there is evidence in the record to contradict this version of events (as there is to contradict other versions of events), but the question is whether a jury would be unreasonable to find for Workman under this prong. We conclude that it would not.

 Second, Frito–Lay reargues in a new form its contention that the "essential functions" of Workman's job and the fact that she needed an accommodation were established before trial and should not have gone to the jury. It contends that to the

---

7. The standard of review on denial of a motion for a new trial under Fed.R.Civ.P. 59 is abuse of discretion. *Wayne v. Village of Sebring,* 36 F.3d 517, 525 (6th Cir.1994) ("[T]he trial court should deny such a motion if the verdict is one that reasonably could be reached, regardless of whether the trial judge might have reached a different conclusion were he the trier of fact. An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made.") (internal citations omitted), *cert. denied,* 514 U.S. 1127, 115 S.Ct. 2000, 131 L.Ed.2d 1001 (1995).

8. The jury instructions on this prong, J.A. at 98 (Jury Charge at 17), reflect the trial court's understanding of the law prior to *Gilday v. Mecosta County,* 124 F.3d 760 (6th Cir.1997), on the issue of whether "mitigating measures such as medicines, or assistive or prosthetic devices," 29 C.F.R. § 1630 App. 1630.2(j), should be considered in determining substantial impairment. *Gilday* holds that they should. *Gilday* does not change the outcome of this case, because the defendant did not object to this part of the jury instructions (Fed R.Civ.P. 51, J.A. at 591).

extent the adverse jury verdict relied on deciding these issues, it is wrong as a matter of law, or at least should be subject to a retrial. This argument is unavailing. There is no reason to believe that the jury decided either of these issues adversely to defendant. They need not have done so to find the defendant liable. They reasonably could have made a determination that a continuous presence on the line was an essential function, and that Workman could perform such a function *with* a reasonable accommodation.[9] As to "essential functions" specifically, the plaintiff concedes that a continuous presence (of *someone*) at the line was a necessary component of the position at issue, Second Br. of Plaintiff–Appellee at 35, and this was not disputed at trial; thus, it is reasonable to assume that the jury decided likewise. As to whether Workman required an accommodation, it does not matter what the jury decided. If she did not, Frito–Lay would have been wrong not to reinstate her; if she did, they would have been wrong not to provide a reasonable accommodation. The ADA defines a "qualified individual with a disability" as "an individual with a disability who, *with or without* reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (emphasis added). The defendant's liability under the ADA does not turn on the jury's resolution of these two issues.

■ Third, Frito–Lay argues that Workman did not meet her initial burden under *Monette v. Electronic Data Systems Corp.,* 90 F.3d 1173, 1183 (6th Cir.1996) "of proposing an accommodation and showing that *that* accommodation is objectively reasonable." Similarly, the Company argues that it offered Workman a reasonable accommodation—wearing a sanitary undergarment—which she refused, which would mean she is no longer a "qualified individual with a disability." 29 C.F.R. § 1630.9(d). Conversely, Workman argues that the opposite is true on both counts. Each party points to places in the record that support his or her version of events. *See* First Br. Defendant–Appellant

at 43–47; Second Br. Plaintiff–Appellee at 36–38; Third Br. Defendant–Appellant at 27–33. It is at best difficult to discern what really happened in conversations between Workman and her then-supervisor, Mark Paschal. Because we have little reason to second-guess the jury on these issues, we hold that the defendant is not entitled to a new trial on them.

Finally, Workman asks for a reversal or a new trial on the issue of compensatory damages. This argument consists of little more than replaying the testimony heard by the jury before they decided to deny compensatory damages. Plaintiff's counsel made his arguments to the jury on compensatory damages right before they retired to decide the issue. J.A. at 609–11 (Trial Tr. at 429–31). The fact that the defendant did not offer counter-evidence on this issue is not dispositive. The jury evidently discredited the testimony presented on this issue, and we hold that it was not unreasonable to do so.

## C. Other Decisions of the District Court

Each party makes an additional complaint about decisions of the district court. Frito–Lay contends that the district court's order of reinstatement asks the impossible: first, by reinstating Workman to a position she never held; and second, by not specifying the type of "reasonable accommodation" Frito–Lay is supposed to provide, save that it should not be the use of a sanitary undergarment. We agree with Frito–Lay that the proper characterization of Workman's job is as both a floor person and a packer, depending on which line is operational, and we remand to the district court to make this correction to the judgment. We also remand for a determination by the district judge as to the most appropriate accommodation, considering the parties in their current positions. Workman has a nonstatic medical condition and for the purpose of making an equitable determination as to how to accommodate this evolving condition, the district

---

9. This is one of the key differences between the state law claim decided before trial and an ADA claim. A determination that an accommodation

is required for the employee to perform the functions of the job ends the inquiry under Tennessee law, but does not do so under the ADA.

court must examine the facts as they now exist.

■ Finally, Workman complains that the claims of retaliation under the ADA and for punitive damages should have gone to the jury. The retaliation claim is addressed in Part D, below, and in Judge Guy's separate opinion for the court majority. We agree with the district judge that Workman is not entitled to punitive damages and affirm that decision. To support a claim for punitive damages, the plaintiff must show that the employer "engaged in a discriminatory practice ... with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). The district court correctly found that the "egregiousness" of conduct presented at trial did not rise to the level necessary for the issue to go to the jury. Even viewing the facts in the light most favorable to Workman, there was not enough evidence presented at trial for a reasonable jury to infer that Paschal had the requisite malice in taking the actions that he did.

### D. The Retaliation Claim

Because my colleagues on the panel hold that Workman's retaliation claim was correctly decided as a matter of law against her, I respectfully dissent from that aspect of the disposition. A retaliation claim requires a prima facie showing that (1) the employee engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse action. *See, e.g., Canitia v. Yellow Freight Sys., Inc.,* 903 F.2d 1064, 1066 (6th Cir.), *cert. denied,* 498 U.S. 984, 111 S.Ct. 516, 112 L.Ed.2d 528 (1990). Shortly after Workman filed the EEO charge in November 1993, she was terminated. Before that time, Workman was engaged in ongoing (although seemingly unproductive) discussions with her supervisor, Mark Paschal. These discussions turned hostile and then ceased altogether (when she was fired) following the filing of her EEO charge. The timing of her termination provides circumstantial evidence of a causal connection. *See Langford v. Lane,* 921 F.2d 677, 683 (6th Cir.1991) ("The matter of causation is an issue of fact which must be decided by the jury. Also, the question of what actually motivated plaintiff's discharge may, of course, be determined by circumstantial evidence.") (internal quotations omitted). Because a reasonable jury could have found that Workman was terminated in response to her filing the EEO charge, and that the timing is circumstantial evidence of a causal connection, I would reverse the district court on this matter and remand for trial on the retaliation claim.

My position is not inconsistent with a determination that the punitive damages claim should not have gone to the jury. A colorable claim of retaliation is not the same as a colorable claim of "callous, reckless, or egregious disregard of the plaintiff's federal rights." *Beauford v. Sisters of Mercy–Province of Detroit, Inc.,* 816 F.2d 1104, 1109 (6th Cir.), *cert. denied,* 484 U.S. 913, 108 S.Ct. 259, 98 L.Ed.2d 217 (1987). In *Beauford,* the court concluded that the plaintiff had produced evidence sufficient to go to a jury on a claim of intentional discrimination, but not on a claim for punitive damages. I believe the same is true for Workman, and that she should have been able to make her case for retaliation to a jury. The majority, however, concludes otherwise and affirms the judgment as a matter of law on the retaliation claim.

### IV. CONCLUSION

In sum, we **AFFIRM** the decisions of the district court on the jury charge, the exclusion of untimely documents, and judgment as a matter of law on retaliation and punitive damages; we uphold the jury verdict on liability and the lack of compensatory damages; and we **REMAND** the judgment to the district court for specific clarifications regarding the order of reinstatement.

### CONCURRENCE

RALPH B. GUY, Jr., concurring in part and writing separately.

■ I concur in all of Judge Moore's opinion except Part III.D. I would affirm the dismissal of the retaliation claim.

Plaintiff claimed that her employment was terminated in retaliation for having filed an EEOC charge which alleged that defendant was refusing to return her to work or provide reasonable accommodation in violation of the ADA. By the time plaintiff filed the EEOC charge in late November 1993, she had already concluded from her discussions with Paschal that he would not allow her to return to work or offer a reasonable accommodation. While there was evidence that Paschal was verbally hostile to plaintiff concerning the EEOC charge, such hostility does not constitute an adverse employment action. As the district court emphasized, defendant's position concerning plaintiff's ability to return to work with or without accommodation remained essentially the same before and after she filed the EEOC charge. Thus, there was no evidence that plaintiff suffered any adverse action as a result of having filed the EEOC charge, and the district court properly granted judgment as a matter of law to defendant on this claim.