# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2061

_____

Roger Duello,                                          *
                                                       *
        Appellant,                              *
                                                       *
                                                       *  Appeal from the United States
    v.                                            *  District Court for the
                                                       *  Northern District of Iowa.
Buchanan County Board of Supervisors  *
and Buchanan County, Iowa,                   *
                                                       *
        Appellees.                              *

_____

Submitted:  November 3, 2010
Filed:  December 20, 2010

_____

Before MELLOY, HANSEN, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

      Roger Duello ("Duello") sued Buchanan County, Iowa ("County") for wrongful termination, in violation of the Americans with Disabilities Act ("ADA") and the Iowa Civil Rights Act ("ICRA").  The district court[1] granted summary judgment in favor of the defendants, finding that Duello could not prevail under either statute because he was not a "qualified individual" within the meaning of the ADA.  Duello appeals, and we affirm.

---

     [1] The Honorable Jon S. Scoles, United States Magistrate Judge for the Northern District of Iowa, sitting with the consent of the parties pursuant to 28 U.S.C. § 636(c).

I.

Duello began working for the Buchanan County Secondary Road Department in 1988. Initially, his job duties consisted of shop maintenance and janitorial work. However, in the 1990s, Duello moved into the position of Operator II, where he mostly used a maintainer (road grader) and a dump truck to maintain approximately seventy-four miles of County roads. In the winter, Duello was primarily responsible for plowing snow with a maintainer, and in summer, Duello was primarily responsible for refurbishing the County's mostly gravel roads by spreading new rock with a dump truck and a maintainer. Duello also participated in other road projects, including using a tractor to mow alongside County roads. As an Operator II, the County required Duello to possess a valid commercial driver's license ("CDL").

On October 6, 2006, while driving a dump truck, Duello experienced a severe headache and nausea, forcing him to stop the truck and radio for assistance. Duello was subsequently hospitalized and diagnosed as having had a seizure. As a result of this seizure, Duello was barred from driving and working near moving machinery for at least six months. Duello also had to formally relinquish both his regular driver's licence and his CDL. Duello then applied for leave under the Family and Medical Leave Act ("FMLA"), which was granted and extended from October 6, 2006 to December 29, 2009.

On December 18, 2006, Duello responded to the County's request for further information on his medical condition by providing a letter from his physician, Dr. Robert Rodnitzky ("Dr. Rodnitzky"). The letter memorialized Duello's illness, his work restrictions, and the possibility of resuming all normal work activities in six months if no further seizures occurred. Duello also submitted a written request for additional leave until his work restriction lapsed, which he anticipated being in April of 2007 because he had not experienced any additional seizures. Under the governing

-2-

collective-bargaining agreement ("CBA"), Duello had the right to request up to one year of unpaid leave, but the County ultimately retained discretion in deciding whether to grant leave.

On January 2, 2007, the Buchanan County Board of Supervisors ("Board") met and discussed the status of Duello's employment. The Board was composed of three supervisors, and of the three supervisors, only Ellen Gaffney ("Gaffney") and Ralph Kremer ("Kremer") were present to discuss the matter. The remaining supervisor, Mike Ferreter ("Ferreter"), was unable to attend the meeting due to an illness.[2] Following the discussion, Gaffney moved to terminate Duello's employment because, according to the minutes of the meeting, Duello had a "physical disability that prevent[ed] him from carrying out his duties of employment" and because there was "no reasonable prospect of recovery that would enable him to resume his duties." Kremer seconded the motion, and the motion carried. The following day, on January 3, 2007, the County sent a letter to Duello stating that Duello's employment was terminated upon receipt of the letter for the reasons articulated by the Board at the meeting.

On January 16, 2007, Duello, through counsel, sent the defendants a letter citing Dr. Rodnitzky's letter and requesting that the Board "immediately reinstate Mr. Duello . . . and grant him additional leave until he is released by his doctor to return to his full activities." On January 22, 2007, the Board again convened and reconsidered the matter. All three supervisors were present, and after some discussion, Gaffney made a motion "to stand by the original decision of dismissal." Ferreter seconded the motion, and the motion carried. The Board informed Duello of its decision in a January 24, 2007 letter. Later, Ferreter testified at a deposition that he

---

[2] According to the record, Ferreter had been recently elected to the Board, but his illness prevented him from being sworn in until January 3, 2007.

would have voted to grant Duello's leave request instead of terminating Duello's employment if he had thought Duello could have reacquired a CDL.

Thereafter, Duello filed suit against the defendants under the ADA and the ICRA for wrongful termination. At some point, Duello learned that the County had previously decided not to fire two other Secondary Road Department employees who could not drive, at least temporarily. The County permitted Jerome Slater ("Slater"), a surveyor, to keep his job even though his licence was twice suspended in the 1980s. Similarly, the County granted Dale Eder ("Eder") a leave of absence after he was injured on the job. After considering all of this evidence, the district court granted summary judgment, concluding that Duello could not prevail as a matter of law on either claim because Duello could not show he was a "qualified individual" within the meaning of the ADA.

Duello now appeals the district court's determination on his qualifications. As the parties acknowledge, we need only consider Duello's qualifications under the ADA because "disability claims under the ICRA are generally analyzed in accord with the ADA." Gretillat v. Care Initiatives, 481 F.3d 649, 652 (8th Cir. 2007).

II.

"We review the district court's grant of summary judgment *de novo*, viewing the evidence and drawing all reasonable inferences in the light most favorable to [Duello], the nonmoving party." Kirkeberg v. Canadian Pac. Ry., 619 F.3d 898, 903 (8th Cir. 2010). "Summary judgment is appropriate only when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." Yon v. Principal Life Ins. Co., 605 F.3d 505, 509 (8th Cir. 2010) (citing Fed. R. Civ. P. 56(c)).

-4-

A plaintiff seeking to recover under the ADA must establish a prima facie case of discrimination, that is: "a disability within the meaning of the ADA; qualifications to perform the essential functions of the job, with or without reasonable accommodation; and an adverse employment action due to a disability." Wenzel v. Missouri-American Water Co., 404 F.3d 1038, 1040 (8th Cir. 2005). "The ADA defines a disability as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." Kozisek v. County of Seward, Neb., 539 F.3d 930, 934 (8th Cir. 2008) (internal quotation and citation omitted).

"To make a prima facie showing that he is qualified for the job, [a plaintiff] must demonstrate that he meets the essential prerequisites for the job, such as basic education, experience and training, and that he can perform the essential functions of the job with or without a reasonable accommodation." Kammueller v. Loomis, Fargo & Co., 383 F.3d 779, 786 (8th Cir. 2004). "Essential functions of the job are 'fundamental job duties,' and the employer's judgment in this regard is considered 'highly probative.'" Id. (quoting Alexander v. The Northland Inn, 321 F.3d 723, 727 (8th Cir. 2003)). Other evidence able to establish the essential functions of a job include: "written job descriptions prepared before advertising or interviewing applicants for the job; [] the amount of time spent on the job performing the function; [] the consequences of not requiring the incumbent to perform the function; and [] the current work experience of incumbents in similar jobs." Chalfant v. Titan Distribution, Inc., 475 F.3d 982, 990 (8th Cir. 2007) (internal quotation and citation omitted). Under long-held circuit precedent, "regarded as" plaintiffs are not entitled to reasonable accommodations because the ADA was not intended to grant reasonable accommodations to those who are not actually disabled. Weber v. Strippit, Inc., 186 F.3d 907, 917 (8th Cir. 1999). Finally, whether a plaintiff is qualified is measured at the time of the adverse employment action, even if the plaintiff is likely to recover in a relatively short period of time. Browning v. Liberty Mut. Ins. Co., 178 F.3d 1043,

-5-

1048 (8th Cir. 1999) ("The fact that [Browning] continued to heal [from her injury], gain strength and use of her arm, once again becoming a qualified individual who could perform the essential functions of the job, does not obviate the fact that she was not a qualified individual at the time of her termination, and thus not under the protective umbrella of the ADA.").

In this case, the parties agree that Duello was only disabled within the "regarded as" prong of the definition because, as the district court stated, the effects of the seizure were only "temporary and unlikely to have a long-term impact on any major life activity." Consequently, the parties primarily contest whether Duello met the essential prerequisites for his job and whether Duello could perform the essential functions of his job without any accommodation.[3] Duello argues that even if driving and working around moving machinery were generally essential functions of his position, the County's ongoing policy of excusing Secondary Road Department employees from duties they temporarily could not perform demonstrates that it was not essential for Duello to either drive or work near moving machinery prior to his anticipated April return date. Duello further claims that because driving was not an essential function of his job prior to April, possessing either a CDL or an ordinary driver's license was not an essential prerequisite of his position. For support, Duello cites Workman v. Frito-Lay, Inc., 165 F.3d 460 (6th Cir. 1999) and mostly relies on Ferreter's deposition statement, as discussed above, and the County's treatment of

---

[3]The parties also dispute whether Duello was entitled to reasonable accommodations. Duello asserts that Weber is no longer controlling in light of the legislative history of the ADA Amendments Act of 2008, Pub. L. No. 110-325, 112 Stat. 3553, which indicates some congressional disapproval for how narrowly the courts have construed portions of the ADA. However, even if we were to find this argument persuasive, we are not free to overrule the holding of a prior panel under these circumstances. Owsley v. Luebbers, 281 F.3d 687, 690 (8th Cir. 2002) ("It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel.").

Slater and Eder.  Duello also relies on the ability of the County to cover for Duello's absence until January 2007.[4]  We disagree.

Even assuming Duello met the essential prerequisites for his position, Duello was unable to perform the essential functions of his job.  The record shows that driving and working around machinery were essential functions of Duello's job as an Operator II and that Duello was unable to perform these duties at the time the Board terminated his employment.  According to the County's job description of an Operator II, Duello was required to operate "light and medium heavy equipment."  Additionally, Duello's own testimony and the statements of other County employees and officials indicate that Duello's "essential function" as an Operator II was to maintain a specified stretch of road with a maintainer and a dump truck.  Moreover, the County Engineer's largely uncontested affidavit states that, in winter, all Secondary Road Department employees, with the exception of the Engineer, his assistant, and his secretary, were required to use machinery to assist in snow removal.  Finally, by Duello's own admission, as corroborated by the remaining evidence in the record, Duello could not drive, work around moving machinery, or generally perform the duties of an Operator II.  In Duello's own words at deposition:  "Q:  You couldn't perform the functions or the duties of [an] Operator II?  A:  Correct."

Duello argues to the contrary, asserting that it was not essential for him to drive or work around machinery prior to April because the County regularly excused employees, either by granting leaves of absence or exemptions, from duties they were temporarily unable to perform, citing Workman.  In Workman, the Sixth Circuit held that when an employer regularly provides a benefit to all of its employees, the benefit

---

[4] In addition, Duello attempts to show that driving and working near machinery were not essential functions of Duello's position prior to April based upon the purported delay in filling the vacancy Duello's termination left.  However, this argument is factually unsupported by the record because the record shows that the County immediately acted to fill the position within its required hiring protocols.

cannot constitute an accommodation within the meaning of the ADA. 165 F.3d at 467 (finding that an employee's need to be frequently relieved on a manufacturing line would not require an accommodation when the employer "regularly" provided line relief to all of its workers). This is because the essential functions of a job are measured in light of any regularly provided benefits. Id. As such, an employer may run afoul of the ADA by terminating a "regarded as" disabled employee, instead of providing him with a routine benefit. Id.

Here, however, Duello has failed to adduce sufficient evidence to create a material fact as to whether the County had an ongoing practice of excusing Operator IIs from driving and working around machinery when they were temporarily disabled from doing so. Ferreter did testify that he would have voted to grant the leave of absence under the CBA had he thought Duello could reacquire his CDL. However, Ferreter made this statement in the context of explaining why, based upon a friend's inability to reacquire a CDL after a seizure, he thought Duello would be unable to regain a CDL and perform the core duties of an Operator II. While Ferreter may have been factually wrong about Duello's prospects of reacquiring a CDL, Ferreter's statement alone sheds virtually no insight into the ongoing practice of the County because the statement does not reveal if the County would routinely grant leaves or exemptions.

The County's decision to continue employing Slater and Eder also provides no material support for Duello's contention because neither individual was similarly situated to Duello. Slater was a surveyor, not an Operator II, and Slater was still able to perform the essential functions of his job because he could travel to work sites with his coworkers. Likewise, Eder was given a leave of absence after a work injury, but without any other information, it is impossible to meaningfully compare Eder to Duello.

Finally, we can draw no inference from the County's ability to cover for Duello's absence while he was taking leave under the FMLA because the County's ability to cover the position does not meaningfully bear on whether the County had an ongoing policy of excusing Operator IIs from their duties that they could temporarily not perform. Additionally, uncontested portions of the record reveal that the County had difficultly covering for Duello's absence and anticipated further difficulty during the winter months had it granted the leave request. Accordingly, and in light of the fact that Duello failed to show that any employee has ever been granted leave under the CBA provision, we conclude that the defendants are entitled to summary judgment, as the district court held, because Duello could not perform the essential functions of his job, that is, to drive and to work near moving machinery.

III.

For the foregoing reasons, we affirm the judgment of the district court.

_____