**Kenneth BARBER and Brenda Barber, Plaintiffs,**

v.

**PEPSI–COLA PERSONNEL, INC., a foreign corporation, and Pepsi–Cola Company, jointly and severally, Defendants.**

**No. 1:98–CV–443.**

United States District Court, W.D. Michigan, Southern Division.

July 8, 1999.

---

**685**

ability discrimination. However, the court declines to exercise supplemental jurisdiction over the claims based on Michigan's workers' compensation statute and common law loss of consortium, and remands this case to Michigan's Clinton County Circuit Court for additional proceedings related to this claim.

### FACTS

Kenneth Barber began working for Pepsi at its Lansing, Michigan facility in October, 1978, when he was 19 years old. By January, 1995 Barber was employed as a route salesman, otherwise also known as a "combo driver" or "combo route driver" operating out of Lansing. His duties in this position included the sales, delivery, and merchandising of Pepsi–Cola products, pick-up and return of empty bottles and cans of products, and the collection of payment from Pepsi's customers. Put another way, Barber's job required him to, among other things, transport Pepsi products (such as bottles, cans, and syrup containers) in a large truck to customer locations (such as grocery or convenience stores and restaurants); to unload the products from the truck; and to place the products on the customer's shelves, displays, or in coolers. Barber has not disputed that his combo driver job was one of a number of jobs covered by a collective bargaining agreement between Pepsi and Teamsters Local Union No. 580.

Barber alleges that in 1994, he began experiencing pain in his right shoulder. By January, 1995 the pain was so severe that he sought medical treatment. He was eventually diagnosed with a torn rotator cuff of the right shoulder, for which he underwent a surgical repair in March, 1995.

Following surgery, in April, 1995 Barber, who remained under medical restrictions, returned to work at Pepsi under its "transitional duty" program. This program was designed by Pepsi to allow an employee an opportunity to work while

---

Wayne Allen Harrison, Harrison & Scott, PC, Lansing, MI, for Kenneth Barber, Brenda Barber, plaintiffs.

Jeffery M. Peterson, Kienbaum, Opperwall, Hardy & Pelton, PLC, Birmingham, MI, for Pepsi–Cola Personnel, Inc., defendants.

### OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MILES, Senior District Judge.

Plaintiffs Kenneth Barber and Brenda Barber filed this action in a Michigan court against defendants Pepsi–Cola Personnel, Inc. and the Pepsi–Cola Company (collectively "Pepsi" unless otherwise noted). Kenneth Barber alleges he sustained a shoulder injury which has rendered him permanently unable to lift or work above shoulder level with his right arm. He contends that Pepsi, his employer, violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, and Michigan law by removing him from a "transitional" position in which it placed him after his injury and by refusing to allow him to return to work in any other capacity. Barber's wife Brenda has also asserted derivative claims against Pepsi.

Pepsi, which removed the action, has filed a motion for summary judgment, which plaintiffs have opposed. For the following reasons, the court hereby grants the motion to the extent that it seeks dismissal of plaintiffs' claims based on dis-

recuperating from an injury by gradually easing the employee back to full service. The transitional duty program is, however, intended for employees who are under temporary medical restrictions due to an occupational injury or illness. Pepsi's written policy governing the program expressly limits the program to employees whose restrictions last no more than 90 days. The policy, applied on a national scale, provides as follows:

*Purpose*

To provide Employees who have temporary restrictions resulting from occupational injuries or illnesses with an opportunity to return to the workplace and perform value-added tasks consistent with medically documented capabilities.

*Policy*

Pepsi–Cola may offer Transitional Duty to Employees with medically documented temporary limitations on physical capabilities resulting from occupational injuries or illnesses. Transitional Duty assignment is subject to conditions including availability of work as well as local work rules and collective bargaining agreements.

† Transitional Duty is appropriate for Employees with temporary medical restrictions which are anticipated to last from one to ninety days.

† Both Pepsi and those enrolled in Transitional Duty are subject to all provisions of the applicable State Worker's Compensation statute.

† Transitional Duty assignments are temporary and designed to help an Employee return to regular duty, they are not permanent job assignments.

Defendant's Motion for Summary Judgment, Exhibit E.

Despite Pepsi's written policy limiting transitional duty to 90 days, and apparently aware of Barber's desire to continue working, Pepsi allowed Barber to remain on transitional duty for several months. At some point, however, it became clear that Barber's medical restrictions were permanent; he could no longer lift or work above the shoulder with his right arm. In November, 1995, Pepsi removed Barber from transitional duty, allegedly telling him that he was no longer needed if he could not return to his combo driver position.

Barber alleges that since Pepsi removed him from transitional duty in November, 1995, he "has bid or attempted to bid on several available jobs" at Pepsi "for which he is qualified and which he is physically able to perform." First Amended Complaint and Demand for Jury Trial (hereinafter "Complaint") at 4, ¶ 24. He also alleges that since that time, Pepsi has either denied his bids or refused to allow him to bid on "available jobs for which he is qualified and which he is physically able to perform." *Id.*, ¶ 25.

After his injury, Barber filed a claim for benefits under Michigan's Worker's Disability Compensation Act ("MWDCA"), M.C.L. § 418.101 *et seq.* Pepsi, which conceded that Barber's shoulder injury was the result of his employment, did not dispute his entitlement to benefits under the statute. Complaint, ¶s 17, 48. At some point during his transitional duty, according to Barber, he raised a question about the calculation used to determine the amount of worker's compensation benefits he was receiving. Although the matter was apparently resolved to his satisfaction, Barber alleges that continuing ill feelings generated by his comp claim ultimately caused Pepsi to remove him from transitional duty and to refuse to allow him to return to work.

Barber last worked for Pepsi on November 28, 1995. Barber Dep. at 18. Since that time, however, he has found other ways to spend his time. For approximately one year, he worked for a local school district as a substitute bus driver, a position which he was able to perform without experiencing problems with his injured shoulder. *Id.* at 17–18. Barber also worked for a flooring subcontractor, in-

stalling floors, *id.* at 19–20, and for his mother-in-law's interiors business, selling flooring and window treatments. *Id.* at 21–22. While working for the flooring subcontractor, Barber became interested in starting his own flooring business, which he ultimately did. Operating as Barber's Floors & More, he currently works approximately 60 hours per week. *Id.* at 22–23. His duties include calling on prospective buyers, measuring flooring, unloading trucks, hiring installers, and occasionally (once per week) installing floors himself. *Id.* at 11–12. Barber's current work requires some lifting, up to the waist, of wood or ceramic flooring materials. *Id.* at 12. Although the work occasionally causes Barber's shoulder to "tighten[ ] up a little bit[,]" he experiences no pain. *Id.* at 14. According to Barber, he picked an occupation "where I felt that I would not lift above my head. Most of the flooring business is done on the floor." *Id.* at 15. His ultimate goal is to be able to hire subcontractors to perform all of the physical aspects of the work; according to Barber, "I feel that with 20 years at Pepsi–Cola as a salesman, I am better qualified to sell than to install." *Id.*

In January, 1996, Barber filed charges of discrimination with both the Michigan Department of Civil Rights and the United States Equal Employment Opportunity Commission ("EEOC"). He received a right to sue letter from the EEOC in December, 1997, and filed this action within 90 days thereafter.

The First Amended Complaint, filed by the plaintiffs in Michigan's Clinton County Circuit Court on or about May 5, 1998, is nominally divided into four counts. Count I alleges violation of Michigan's Handicappers' Civil Rights Act, now known as the Persons with Disabilities Civil Rights Act ("MPDCRA"), M.C.L. § 37.1101 *et seq.* Count II alleges violation of the ADA. Count III alleges violation of the MWDCA. Count IV asserts a claim of loss of consortium on behalf of Brenda Barber.

Pepsi filed a notice of removal on June 5, 1998. Although their complaint clearly contained a claim arising under Michigan's worker's compensation statute, the MWDCA claim, which is nonremovable, plaintiffs did not file a motion for remand. *See* 28 U.S.C. § 1445(c); 28 U.S.C. § 1447(c).

### ANALYSIS

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In evaluating a motion for summary judgment, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the burden of establishing the non-existence of any genuine issue of material fact and may satisfy this burden by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). While inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Only factual disputes which may have an effect on the outcome of a lawsuit under the applicable substantive law are "material." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

### Disabililty Discrimination

Pepsi argues that because the evidence fails to show that Barber is substantially

restricted in the performance of any major life activities, he is not "disabled" within the meaning of the ADA. Pepsi also argues that Barber is not entitled to relief under the ADA in any event because he cannot perform the essential duties of any jobs at issue.

The ADA provides in pertinent part that

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). Under the ADA, a disability is defined as

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). "Substantially limits" means the person cannot perform a "major life activity that the average person in the general population can perform" or is

Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1)(ii). "'Major life activities' must indeed be 'major.'" *Shah v. Upjohn Co.,* 922 F.Supp. 15, 23 (W.D.Mich.1995), *aff'd,* 107 F.3d 871 (6th Cir.1997) (Table). These have been defined as

... functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

29 C.F.R. § 1630.2(i).

In determining whether an impairment is "substantially" limiting, the court "should" consider

(i) The nature and severity of the impairment;

(ii) The duration or expected duration of the impairment; and

(iii) The permanent or long term impact, or the expected permanent or long term impact, of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2). In determining whether an individual is substantially limited in the major life activity of working, the following factors "may" also be considered:

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii). The regulations therefore include work among the "major life activities" addressed in the ADA.

Recently, in *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), the Supreme Court expressed some disapproval of the EEOC's decision to include work within the definition of "major life activities." *See id.* (noting that "there may be some conceptual difficulty in defining 'major life

activities' to include work"). However, the Court declined to determine the validity of the definition, assuming without deciding that working is a major life activity. This court will make a similar assumption.

In order to show that he is substantially limited in the major life activity of working, a plaintiff must prove that he is

> significantly restricted in ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

*Id.,* § 1630.2(j)(3)(i). The regulations promulgated under the ADA specifically allow employers to require medical examinations and/or make inquiries of employees, provided they are job-related and consistent with business necessity. 29 C.F.R. § 1630.14(c). Employers may also inquire into the ability of an employee to perform job-related functions. *Id.; see Sutton,* 527 U.S. 471, 119 S.Ct. 2139, 2150, 144 L.Ed.2d 450 ("By its terms, the ADA allows employers to prefer some physical attributes over others and to establish physical criteria").

■ In summary, in order to establish a prima facie case under the ADA, Barber must establish the following:

> (1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, that is, with or without reason-

able accommodation (which he must describe), he is able to perform the essential functions of the job; and (3) that the employer terminated him because of his disability.

*White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir.1995) (footnote and citations omitted); *Gantt v. Wilson Sporting Goods Co.,* 143 F.3d 1042, 1047 (6th Cir.1998). In other words, "[t]he burden is on the plaintiff to establish the existence of an impairment that substantially limits a major life activity as an element of the plaintiff's prima facie case." *Jasany v. United States Postal Service,* 755 F.2d 1244, 1249 (6th Cir.1985).[1]

The first amended complaint which plaintiffs filed in state court specifically alleges that "[a]s a result of the injury to his right shoulder, Mr. Barber is permanently limited from lifting or working above the shoulder with his right arm." First Amended Complaint and Demand for Jury Trial at 4, ¶ 26. Barber has not disputed that this limitation renders him incapable of performing his former position as a combo route driver for Pepsi.[2]

■ Notwithstanding Barber's ability to perform various work, including work as a bus driver and flooring contractor, plaintiffs argue that a genuine issue of fact exists regarding whether Barber is disabled because Pepsi has admitted that he was "unable to perform the essential functions of a whole class of jobs, 'all transport jobs.'" Plaintiffs' Brief in Opposition to

---

1. The MPDCRA provides that an employer shall not

   > Discharge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability that is unrelated to the individual's ability to perform the duties of a particular job or position.

   M.C.L. § 37.1202(b). This statute further provides that

   > "Unrelated to the individual's ability" means, with or without accommodation, an individual's disability does not prevent the individual from doing one 1 or more of the following:

   (i) ... performing the duties of a particular job or position.

   M.C.L. § 37.1103(*l*). Because claims of disability discrimination under Michigan law essentially track those under federal law, resolution of Barber's claim under the ADA also dispenses with plaintiffs' claims under the MPDCRA. *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1178 n. 3 (6th Cir.1996).

2. When asked during his deposition whether, at the time Pepsi removed him from transitional duty, he had "any expectation ... that [he] could go and do [his] old job, combo job[,]" Barber replied, "I highly doubted it." Barber Dep. at 151.

Defendant's Motion for Summary Judgment at 7. What Pepsi has argued, however, is that Barber is unable to perform the physically demanding transport jobs *at Pepsi*. *See* Brief in Support of Defendant's Motion for Summary Judgment at 16–20. Plaintiffs' argument not only misreads Pepsi's motion; it also ignores the evidence, of which Pepsi is well aware, that Barber not only drove a school bus for a time but also currently transports materials for his flooring business. Barber has also not indicated why he is not capable of performing sales-related work—as he did for Pepsi—which is consistent with his physical limitations. And, importantly, Barber's argument also fails to recognize the undisputed fact that he is capable of performing an arguably physical job—laying floors—without the need for any modification of the job's usual responsibilities. Plaintiffs have simply not shown that Barber is or was disqualified from performing other "jobs utilizing similar training, knowledge, skills or abilities," 29 C.F.R. § 1630.2(j)(3)(ii), that is, jobs which do not require overhead work. *Cf. Bridges v. City of Bossier*, 92 F.3d 329, 335 (5th Cir.1996) (holding that even "preemption from employment in one's chosen field does not *per se* establish a substantial limitation on working"), *cert. denied*, 519 U.S. 1093, 117 S.Ct. 770, 136 L.Ed.2d 715 (1997).[3] Because plaintiffs have failed to create a genuine issue of material fact on the claim that Barber is substantially limited in the major life activity of working, as a matter of law he is not considered disabled for purposes of the ADA.

Pepsi also argues that Barber is not disabled because he has not shown that he is restricted in any major life activity other than working. It is noted that in their complaint, plaintiffs' allegations make no mention of restrictions on Barber's activities, apart from his alleged inability to lift

or work above the shoulder with his right arm. During his deposition, when asked what activities he used to enjoy which are now limited by his impairment, Barber mentioned only winter sports, such as snow skiing; softball; water skiing; and remodeling work which required lifting above his head.[4] Barber Dep. at 23–26. Barber testified that he is able to ride bikes and play golf. *Id.* at 23. Of course, as the court has already noted he does not dispute that he is able to perform the duties required of him in operating his own flooring business. The evidence therefore, while indicating that Barber's physical condition affects his ability to perform activities which require overhead lifting, fails to establish that Barber's performance of any "major life activity" is "substantially limited."

Plaintiffs argue that the court should consider whether Barber is substantially limited in the activity of "lifting/working overhead." Plaintiffs' Brief in Opposition at 6. In *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1174 (10th Cir.1996), a Tenth Circuit panel held that "lifting is a major life activity." Concluding that the plaintiff had presented evidence that her multiple sclerosis ("MS") substantially limited her ability to lift, the panel reversed the district court's grant of summary judgment in favor of the defendants, remanding the case for further proceedings on plaintiff's ADA claim. *Id.* However, this court notes that the plaintiff's restrictions in *Lowe* were far more substantial than those evidenced here. The evidence in that case indicated that plaintiff's MS rendered her unable to lift items weighing more than 15 pounds, and she could lift items weighing less than 15 pounds only occasionally. *Id.* at 1174. In contrast, here the medical evidence indicates that Barber's only restriction is—at most—an

---

**3.** *But cf. Best v. Shell Oil Co.*, 107 F.3d 544, 548, 549 (7th Cir.1997) (where evidence indicated that plaintiff truck driver should no longer be driving due to a knee injury, genuine issue of fact remained regarding the im-

pact of the injury on major life activity of working).

**4.** Barber testified that he used to generate additional income by purchasing and remodeling apartments.

inability to lift over his head. Therefore, even assuming that lifting is indeed a major life activity, plaintiffs have failed to create a genuine issue of fact regarding whether Barber's impairment substantially limit his performance of this or any other major life activity.[5]

Plaintiffs, however, also argue that even if Barber is not disabled, they have presented evidence that Pepsi "regarded" him as such. 42 U.S.C. § 12102(2)(C).[6] Specifically, they argue that a number of persons, including Pepsi's own agents, have indicated that Pepsi considered Barber unable to perform any job at Pepsi. Plaintiffs' Brief in Opposition at 7, 9–12. The ADA's legislative history does indicate "that Congress was concerned about eliminating society's myths, fears, stereotypes, and prejudices with respect to the disabled[.]" *Deane v. Pocono Medical Ctr.*, 142 F.3d 138, 144 (3d Cir.1998). However, plaintiffs' argument that Pepsi "regarded" Barber as disabled misunderstands and misapplies the law applicable to such claims. As the Court's recent decision in *Sutton* makes clear, in order to establish that he was "regarded as" disabled, a

plaintiff must show that the defendant entertains "misperceptions about the individual," such as that the plaintiff "has a substantially limiting impairment when, in fact, the impairment is not so limiting." 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450. *See Deane*, 142 F.3d at 144 ("even an innocent misperception based on nothing more than a simple mistake of fact as to the severity, or even the very existence, of an individual's impairment can be sufficient to satisfy the statutory definition of a perceived disability") (citing 29 C.F.R. pt. 1630, app. § 1630.2(*l*)). Here, Pepsi was not at all mistaken about the nature or severity of Barber's injury: he could do little or no overhead work. While Pepsi may have believed that this restriction prevented Barber from performing any of the transport jobs at Pepsi's Lansing facility, plaintiffs have presented no evidence that anyone at Pepsi regarded Barber as unable to perform an entire class of jobs or a broad range of jobs across various classes. "[A]n employer does not necessarily regard an employee as handicapped simply by finding the employee to be incapable of satisfying the singular demands of a par-

---

**5.** Notably, in a recent case, a divided Sixth Circuit panel held that a plaintiff was not disabled within the meaning of the ADA where her impairment—carpal tunnel syndrome—disqualified her from only "the narrow range of assembly line manufacturing jobs that require repetitive motion or frequent lifting of more than ten pounds." *McKay v. Toyota Motor Mfg., USA, Inc.*, 110 F.3d 369, 373 (6th Cir.1997). Similarly, a number of other courts have refused to construe lifting limitations as disabling. *See Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1120 (5th Cir.1998) (former flight attendant's job-related neck injury, which subjected her to medical restrictions on heavy lifting, failed to establish status as a qualified individual with a disability under the ADA); *Snow v. Ridgeview Medical Ctr.*, 128 F.3d 1201, 1207 (8th Cir.1997) ("While lifting is noted under the regulations as a major life activity, a general lifting restriction imposed by a physician, without more, is insufficient to constitute a disability within the meaning of the ADA"); *Thompson v. Holy Family Hosp.*, 121 F.3d 537, 540 (9th Cir.1997) (cervical injury which resulted in registered nurse being subject to various lifting restric-

tions did not establish that plaintiff was disabled within the meaning of the ADA); *Williams v. Channel Master Satellite Sys., Inc.*, 101 F.3d 346, 349 (4th Cir.1996) ("we hold, as a matter of law, that a twenty-five pound lifting limitation—particularly when compared to an average person's abilities—does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity"); *Aucutt v. Six Flags Over Mid–America, Inc.*, 85 F.3d 1311, 1319 (8th Cir.1996) (where the only medical limitation placed upon plaintiff's activities was 25–pound lifting restriction, plaintiff was not "disabled" within the meaning of the ADA notwithstanding diagnosis that he suffered from angina, high blood pressure, and coronary artery disease).

**6.** "The ADA defines a disability as (a) a physical or mental impairment that substantially limits one or more major life activities; (b) a record of such an impairment; or (c) being regarded as having such an impairment.... The plaintiff can proceed to trial without deciding under which prong [he] is covered." *Workman v. Frito–Lay, Inc.*, 165 F.3d 460, 467 (6th Cir.1999).

ticular job. . . . In addition, a person with a shoulder injury does not suffer from a perception of disability based on myth, fear, or stereotype[.]" *Blair v. Professional Corps. Management Co., Inc.*, No. 97–3593, 1999 WL 17648, at *2 (6th Cir. Jan.4, 1999) (citations omitted). Accordingly, because the court finds that plaintiffs have failed to raise a genuine issue of fact on the threshold issue of whether Barber was substantially limited in his performance of a major life activity, including work, or whether Pepsi regarded him as such, the court concludes that he did not qualify for protection under the ADA.

Because the court has concluded that plaintiffs have not established that a genuine issue of fact remains regarding whether Barber was "disabled" under the ADA, it does not become necessary for the court to consider plaintiffs' argument that Pepsi violated the ADA by refusing to make a reasonable accommodation for his alleged disability or by denying him other opportunities at the company. However, the court will nonetheless address this argument.

█ Specifically, plaintiffs argue that Pepsi discriminated against Barber "by making adverse employment decisions based on his disability and/or in failing to accommodate him in a number of ways" which include

(2) [sic] not allowing him an opportunity to bid in [a] total barn re-bid in March, 1996 for positions, the essential functions of which he could perform, with or without reasonable accommodation; (2)[sic] failing to provide him the opportunity to obtain refrigerant recovery certification and allow him to transfer to an available vacant position (full-service

vending); (3) failing to notify him of positions in the company for which he was qualified and could perform with or without reasonable accommodation[.]

Plaintiffs' Brief in Opposition at 17. According to plaintiffs, Barber **"wanted to work and continue his 17 year career with Pepsi with all the benefits attendant thereto"** but "Pepsi refused to accommodate him in any manner whatsoever despite his pleas to be allowed to work." *Id.* at 18.

Plaintiffs' first amended complaint alleges, rather broadly, that Barber "bid or attempted to bid on several available jobs for which he is qualified and which he is physically able to perform." Complaint, ¶ 24. Of these "several available jobs," plaintiffs have to date specifically identified only two: a position which they describe as "the full-service vending job" and a "bulk driver position." Plaintiffs' Brief in Opposition at 15.[7]

Pepsi argues that plaintiffs can not show that, with or without reasonable accommodation, Barber could perform the essential functions of these positions. As defined in the ADA, the term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A); *Gantt*, 143 F.3d at 1046. As the court noted in *Gantt*,

The applicable EEOC regulations provide that it is 'unlawful for a covered entity not to make reasonable accommodation to the *known* physical or mental

---

**7.** Pepsi argues that what plaintiffs call the "full-service vending job" was actually a separate, distinct position of vending mechanic, which required a refrigeration certification that Barber did not have. *See* Defendant's Exhibit H, "Vending Mechanic Bid," signed by Barber and one other person. (Pepsi contends that neither employee won a bid on the position because neither was qualified.) Pep-

si also points out that the actual full-service vending job is one that requires the driver to unload product off the same large truck Barber had used as a combo driver. Barber Dep. at 83–85. As Barber himself testified, "[f]ull service guys filled can machines" while "vending" involved the repair of can machines or coolers. *Id.* at 83–84.

limitations of an otherwise qualified applicant or employee with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business.' 29 C.F.R. § 1630.9(a) .... The Commission's interpretive guidelines indicate that generally 'it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed.' 29 C.F.R. pt. 1630 App. § 1630.9. 'Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation.' *Id.* There is no question that the EEOC has placed the initial burden of requesting an accommodation on the employee. The employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation.

143 F.3d at 1046–47 (footnote omitted). *See Smith v. Ameritech,* 129 F.3d 857, 867 (6th Cir.1997) (plaintiff bears the initial burden of proposing an accommodation and showing that *that* accommodation is objectively reasonable).

Pepsi gave Barber an extended period of transitional duty, even though it was probably not required to do so. *See Gantt,* 143 F.3d at 1047 ("Reasonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected") (citation omitted). Pepsi has also established that Barber was not qualified for the two other positions which he has identified. The "bulk driver position" which plaintiffs contend Barber sought involved delivering large quantities of product to mass merchandisers or other "big" customers such as Meijer, K–Mart, or Target, using a semi-trailer vehicle. Barber Dep. at 37–38. Barber has admitted that although he performed bulk driver duties during his transitional period, he usually had a helper, Gary, who performed the more physically demanding aspects of the job, such as consolidating product in order to make room for a delivery. *Id.* at

108–109. Although Barber testified that there were a "couple" of occasions when his helper Gary did not come to work and he was therefore forced to do the route by himself, Barber indicated that he tried to "appease" Pepsi by doing the work, but within his restrictions, because it was the week before Thanksgiving, which was the company's busiest time of year. *Id.* at 110. According to Barber, "[m]y restrictions were no above-the-shoulder lifting. I could palletize as much as I could up to my chest level and that's what I did. I consolidated." *Id.* at 111. Because he performed as a bulk driver as part of his transitional program with an assigned helper, Barber testified that he did not know whether the position typically included being provided a helper. However, as the result of a grievance which Barber filed regarding his failure to be awarded the bulk driver position, an arbitrator found not only that Barber was not physically qualified to perform the functions of the position because he needed assistance, but also that based on Barber's seniority, Pepsi could not have awarded an open position to him without violating its collective bargaining agreement with the Teamsters' union. Supplemental Brief in Support of Defendant's Motion for Summary Judgment, Exhibit A (Federal Mediation and Conciliation Service Voluntary Labor Arbitration, Opinion and Award), at 23–24.

The evidence also shows that the second position which plaintiffs have identified—the vending job on which Barber attempted to bid—required a refrigeration certificate, which Barber did not have. Defendant's Exhibit H. Barber, who readily admits to not holding the certification, Plaintiffs' Brief in Opposition at 15 n.5, questions this requirement for the position, arguing that allowing him to obtain the certification would have been a reasonable accommodation because it involved only self-study and an examination. However, here the accommodation which Barber seeks—the opportunity to obtain refrigeration certification—has nothing to do with his alleged disability, and for that

matter, neither do any of the other accommodations he now proposes. As stated by the Sixth Circuit, although a plaintiff

> might have a right to reasonable accommodation if he had been discharged because of his disability, from a factual standpoint this also has no relevance to plaintiff's particular situation.... [E]ven if we were to assume that he was discharged because of his disability, there is no evidence that [he] needed any accommodation 'because of' his disability. This lack of relevance is further illustrated by the confusion that arises when one asks the question: how would placing [plaintiff] in [another] position accommodate any of his disabilities? The term 'reasonable accommodation' is defined under agency regulations to mean modifications or adjustments to the work environment, including job restructuring and reassignment to a vacant position, that enable a qualified individual with a disability to enjoy equal employment opportunities as other similarly situated employees without disabilities. *See* 29 C.F.R. S 1630.2(*o*); *see also* BARBARA LINDEMAN AND PAUL GROSSMAN, EMPLOYMENT DISCRIMINATION LAW Ch. 9, at 300 (3d ed.1996). The plain language of this provision suggests that any accommodation should logically be linked to enabling the individual with a disability to overcome limitations or barriers he faces due to the disability.... Such a need has not been demonstrated here.

*Wohler v. Toledo Stamping & Mfg. Co.*, No. 96–4187, 1997 WL 603422, at *6 (6th Cir. Sep.30, 1997). Here, allowing Barber to bid on other positions for which he might or might not have been qualified—for reasons having nothing to do with his shoulder injury (such as lack of certification or sufficient seniority)—would not have amounted to an accommodation of his alleged disability. *See DePaoli v. Abbott*

*Laboratories*, 140 F.3d 668, 675 (7th Cir. 1998) (duty to accommodate by transfer "does not mean an enlightened employer is forbidden to waive its nondiscriminatory prerequisites" for a position). For this reason, and because plaintiffs have not presented evidence that Barber ever made a timely request for accommodation in any event, they have failed to create an issue of fact as to whether or not Pepsi failed to reasonably accommodate Barber's alleged disability.[8]

### The Remaining Claims: Michigan Workers' Compensation Claim and Loss of Consortium

Plaintiffs have asserted a claim under Michigan law for worker's compensation discrimination. This claim is based on M.C.L. § 418.301(11), which states as follows:

> A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act.

Pepsi argues that it is entitled to summary judgment in its favor on this claim because plaintiffs cannot show that any adverse treatment Barber received while on transitional duty, including his removal from the program, was based on his receipt of worker's compensation benefits.

Pepsi removed this action from state court. Federal law, however, generally prohibits the removal of State worker's compensation claims. Title 28 U.S.C. § 1445(c) provides that "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." Because § 1445(c)

---

**8.** Of course, if Pepsi merely "regarded" Barber as disabled, Pepsi would have no obligation to reasonably accommodate him at all. *See Workman,* 165 F.3d at 467 (a finding that the defendant regarded plaintiff as disabled would obviate the Company's obligation to reasonably accommodate him).

does not render the removal jurisdictionally defective, the plaintiffs were required to move for a remand on the basis of a wrongful removal within 30 days after Pepsi's notice of removal. *See* 28 U.S.C. § 1447(c) (requiring a motion to remand a case "on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal"). They did not do so, and therefore must be held to have waived the opportunity to move for a remand of the claim. *Sherrod,* 132 F.3d at 1117 (citing *Williams v. AC Spark Plugs Division of General Motors Corp.,* 985 F.2d 783, 786 (5th Cir.1993)).[9]

However, the court's jurisdiction over plaintiffs' state law claim of worker's compensation discrimination is predicated on 28 U.S.C. § 1367, the supplemental jurisdiction statute. Subsection (c) of § 1367 provides that

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

In addition, 28 U.S.C. § 1441(c) provides that

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of

action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

The Sixth Circuit holds that generally, if the federal claims are dismissed before trial, the state claims should be dismissed as well. *E.g., Musson Theatrical, Inc. v. Federal Express Corp.,* 89 F.3d 1244, 1254–55 (6th Cir.1996), *amended on denial of rhg.,* 1998 WL 117980 (Jan. 15, 1998); *Landefeld v. Marion General Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir.1993). However, "a district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Id.* (citation omitted).

■ Here, discovery has concluded. Because plaintiffs' federal and state law claims alleging disability discrimination were virtually identical, judicial economy and common sense favor the court's exercise of jurisdiction over both claims to decide them together on the merits. However, the claim of worker's compensation retaliation is entirely separate, requiring proof of different elements. Of course, the same is true of Brenda Barber's loss of consortium claim, which is also based solely on state law. *See Franz v. Kernan,* 951 F.Supp. 159, 162 (E.D.Mo.1996) (noting that "several district courts ... have rejected loss of consortium claims under federal civil rights statutes") (citations omitted); *Mohamed v. Marriott Int'l, Inc.,* 905 F.Supp. 141, 159 (S.D.N.Y.1995) (no loss of consortium claim attached to ADA claim). Moreover, considering that claims arising under State worker's compensation laws are generally not removable, federal policy

---

9. The Fifth Circuit has held that 28 U.S.C. § 1445(c) is not a jurisdictional limitation on removal. *In re Excel Corp.,* 106 F.3d 1197, 1201 n. 4 (5th Cir.1997) (citing *Williams v. AC Spark Plugs,* 985 F.2d 783 (5th Cir.1993)). In contrast, the Eleventh Circuit has held that "section 1445(c) is a jurisdictional-based limitation on the district court's removal power."

*New v. Sports & Recreation, Inc.,* 114 F.3d 1092, 1095–96 n. 5 (11th Cir.1997). The court's disposition herein is based on 28 U.S.C. §§ 1367(c) and 1441(c), and therefore the court has not concluded that § 1445(c) is per se a jurisdictional obstacle to the court's retention of the worker's compensation claim.

clearly favors the resolution of this claim in the Michigan court where it was filed. Under the circumstances, the court declines to exercise supplemental jurisdiction over the worker's compensation retaliation and loss of consortium claims. The court will therefore sever and remand these claims to that court.

## CONCLUSION

The court concludes that Pepsi is entitled to summary judgment in its favor on plaintiffs' federal and state law claims of disability discrimination. The court declines to exercise supplemental jurisdiction over plaintiffs' state law claims of worker's compensation retaliation and loss of constorium, and the court therefore remands the action to Michigan's Clinton County Circuit Court for consideration of these remaining claims.

So ordered this 8th day of July, 1999.