**Mary KEPPY, Plaintiff/Counter–
Defendant–Appellee,**

v.

**Jim LILIENTHAL and Robert Lilienthal,
Defendants/Counter–Plaintiffs–
Appellants.**

**No. 92–1960.**

Court of Appeals of Iowa.

Sept. 16, 1994.

John R. Newman of Wehr, Berger, Lane & Stevens, Davenport, for appellants.

Joseph C. Creen of McDonald, Stonebraker & Cepican, Davenport, for appellee.

Considered by DONIELSON, C.J., and HABHAB and HUITINK, JJ.

HABHAB, Judge.

In 1991, the plaintiff, Mary Keppy, and the defendants, Jim and Robert Lilienthal, entered into agreements concerning a feeder pig operation to be run by Keppy on a farm owned by Merle Turkle. None of the agreements were ever reduced to writing, and the parties disagree on many of the terms.

Keppy's trial testimony revealed the Lilienthals entered into discussions with her to revitalize their pig herd which had been ravaged by pseudo-rabies. Keppy stated the Lilienthals were to lease sows and boars to Keppy to replenish their herd, and from the sale of the offspring the Lilienthals were to receive forty-five percent of the proceeds, she was to receive thirty-six percent, and nineteen percent was to be used to pay for the feed.

Keppy was to provide the animal husbandry to properly breed and feed the pigs and care for them until sale. She was also to provide the place for raising the pigs, on Turkle's farm, and to provide utilities for the confinement facility. Keppy was also to pay all veterinary costs.

According to Keppy's version of the agreement, the Lilienthals were to deliver forty gilts per month. The Lilienthals testified they believed they were entering into a contract with Turkle, not Keppy.

At the outset, the Lilienthals provided Nutrina Feeds to the confinement facility. However, sometime in December 1991, the Lilienthals entered into a financial arrangement with Wayne Feeds in order to obtain financing for their cattle operation. They agreed to purchase all of their feed needs for both their cattle and hog operations from Wayne Feeds.

In January 1992, Keppy began to experience mortality problems with the baby pigs and scouring problems in general. Through the process of elimination and after discussions with the veterinarian, she determined the problem was with the feed. Keppy requested a "feed explosion" report from Wayne Feeds. She wanted to know the percentage of nutrients and medication in the feed that was being delivered. Wayne Feeds refused to provide this information.

In March 1992, Keppy decided to switch feed suppliers from Wayne Feeds to Dixon Feeds. Keppy claimed she switched the feed because the Lilienthals failed to provide the "best feed" as per the agreement. The Lilienthals testified that when they found out Keppy had switched feed suppliers, they informed Keppy and Turkle the agreement had been terminated. They further testified that Keppy had sold a number of hogs in violation of their agreement, and Keppy owed them $4143.35.

Keppy claims the Lilienthals knew she was selling hogs as early as November 1991, and she had offered them their share of the proceeds, but was told she should keep the proceeds to pay utilities. The Lilienthals testified that when they went to the Turkle farm to repossess the hogs, they were met by the county sheriff and told no breeding stock of feeder pigs could leave the premises.

On March 26, 1992, Keppy filed a petition for injunction, requesting the Lilienthals be

enjoined from removing the hogs from the farm. Keppy also claimed the Lilienthals had increased the risk of exposing the hogs to further danger based on their inspection practices. Keppy also claimed the Lilienthals had called numerous feed suppliers and informed them they were not going to pay for any feed for the operation.

It is the merits of the counterclaim that are before us on appeal. The Lilienthals denied Keppy's allegations, and filed a counterclaim, requesting a writ of replevin confirming their right to possession of all the property on the Turkle farm relating to the feeder operation.

Following a hearing on the counterclaim, the district court ruled that although there was no written document, there appeared to be an agreement between Keppy and the Lilienthals, and Keppy was to provide the animal husbandry necessary to raise the hogs. The district court further found Keppy had the authority to change the source of the feed based on the long history of the operation. The district court further opined that Keppy did not breach the contract by selling the hogs and changing the feed.

The court determined the Lilienthals had first breached the contract by changing the source of the feed to Wayne Feeds. The court reasoned Keppy changed the source of the feed to Dixon Feeds in order to protect both her investment and that of the Lilienthals, due to the high mortality rate of the hogs. The district court additionally ruled that Keppy sold the hogs in order to make certain the feed order would be paid for. The district court held that Keppy had a herders' lien upon the hogs pursuant to Iowa Code section 579.1 (1991). The Lilienthals have appealed. We affirm.

I. *Scope of review.* Our review in this case is for corrections of errors at law.

An action for replevin shall be by ordinary proceedings. Iowa Code section 643.2 (1991). The scope of review is at law and findings of fact shall have the effect of a special verdict. Iowa R.App.P. 4. When a replevin action is tried to a court without a jury, the findings of fact have the force of a jury verdict and are binding upon the reviewing court if based upon substantial evidence. *Ritchie v. Hilmer,* 251 Iowa 1002, 103 N.W.2d 858, 859 (1960).

We construe the trial court's findings broadly and liberally. *Grinnell Mut. Reins. Co. v. Voeltz,* 431 N.W.2d 783, 785 (Iowa 1988). In case of doubt or ambiguity we construe the findings to uphold, rather than defeat, the district court's judgment. *Id.* We are prohibited from weighing the evidence or the credibility of the witnesses. *Id.*

A finding of fact is supported by substantial evidence if the finding may be reasonably inferred from the evidence. In evaluating sufficiency of the evidence, we view it in its light most favorable to sustaining the court's judgment. We need only consider evidence favorable to the judgment, whether or not it was contradicted.

*Briggs Transp. Co. v. Starr Sales Co.,* 262 N.W.2d 805, 808 (Iowa 1978).

"Evidence is substantial or sufficient when a reasonable mind could accept it as adequate to reach the same findings." *Waukon Auto Supply v. Farmers & Merchants Sav. Bank,* 440 N.W.2d 844, 846 (Iowa 1989) (citation omitted). Evidence is not insubstantial merely because it could support contrary inferences. *Grinnell Mut. Reins. Co.,* 431 N.W.2d at 785 (citation omitted).

With these principles in mind, we turn to the issues raised on appeal.

II. *Mootness.* Keppy argues this appeal should be dismissed due to mootness since the sows have now been returned to Lilienthals and the pig offspring have been sold. "In general, an action is moot if it no longer presents a justiciable controversy because the issues involved have become academic or nonexistent." *Buchhop v. General Growth Properties,* 235 N.W.2d 301, 302 (Iowa 1975). We agree with the appellants this appeal should not be dismissed due to mootness.

III. *Termination of the contract.* Lilienthal contends the oral contract was terminable at will. The district court found there to be no express agreement by the parties re-

garding a specific duration of the oral contract. The court did, however, determine the parties intended the contract to last until a specific event occurred. The court found the parties intended the contract to be in effect until Lilienthal's herd could be revitalized and the parties could make a profit.

■ The law in Iowa is not well developed regarding the duration of contracts where the parties fail to specify a duration. A contract granting a sole distributorship for an indefinite period was found to continue for a reasonable time and could be terminated without cause only upon reasonable notice. *Des Moines Blue Ribbon Distrib. v. Drewrys Ltd.*, 256 Iowa 899, 129 N.W.2d 731 (1964). When the duration of employment contracts is indefinite, the contract can be terminated at will by either party. *Blackhawk Bldg. Sys. v. Law Firm*, 428 N.W.2d 288 (Iowa 1988).

If a period of duration can be fairly implied from the nature of the contract, its subject matter and relationship of the parties, the contract is not terminable at the pleasure of either party and the court will give effect to the manifest intent of the parties. It has also been held that a contract will be held terminable within a reasonable time or revocable at will, depending on the circumstances, where no termination date was within the contemplation of the parties, or where their intention in regard thereto could not be ascertained.

17A C.J.S. *Contracts* § 398, at 480 (1963).

■ Evidence was presented which fairly implied the duration of the contract given the nature of the contract and the surrounding circumstances. Lilienthals entered the agreement in order to revitalize their herd and earn money. There was also testimony that Keppy made it known to Lilienthals that she intended to have her own farrowing operation within three years. Keppy testified she told Lilienthals she leased Turkle's farm and farrowing facility for three years. Turkle's testimony supported Keppy's assertion that the duration of the contract with Lilienthals was to be about three years. We find there was substantial evidence to support the district court's conclusion the contract was not terminable at will.

IV. *Breach of the contract.* Lilienthal argues the district court's finding that Keppy did not breach the oral contract is not supported by substantial evidence. Lilienthals contend Keppy breached the contract by selling feeder pigs without prior consent and withholding the proceeds; by switching feed suppliers without prior consent; and by performing husbandry poorly. We disagree.

■ There was both testimony and evidence presented which supported the finding Lilienthals knew about the sale of the hogs before the sale or else failed to object to the sale afterward. The evidence also supports the district court's findings that any funds which were not given to Lilienthals were retained by Keppy in order to pay for the feed.

■ We also find there was substantial evidence to support the district court's finding that Lilienthals breached the oral contract regarding the feed which forced Keppy to switch feed suppliers. Lilienthals do not dispute they were bound to provide the "best feed." In effect, they are arguing they did provide the best feed. There is ample evidence supporting the contrary position. Testimony was given that the feed provided by Wayne Feeds was creating health problems for the herd. In addition, testimony was given that Keppy had good reason to doubt the quality of the feed and the ability and desire of Wayne Feeds to provide feed which could more adequately meet her needs.

■ Finally, we also find there is substantial evidence to support the district court's finding that there was no breach of the oral contract due to poor husbandry practices. Expert testimony was provided by a livestock specialist which supported Keppy's ability, knowledge, and use of good husbandry techniques. A veterinarian's report also showed the management of the farrowing house was very good.

V. *Right to possession of the hogs.* Lilienthals argue the district court erred in concluding Keppy had a herders' lien, under Iowa Code section 579.1 (1991), which gave her superior possession. As in the previous divisions, this scope of review is at law and

**440**

findings of fact shall have the effect of a special verdict. Iowa R.App.P. 4.

Section 579.1 provides:

> Livery and feed stable keepers, herders, feeders, keepers of stock and of places for the storage of motor vehicles, boats and boat engines and boat motors shall have a lien on all property coming into their hands, as such, for their charges and the expense of keeping, but such lien shall be subject to all prior liens of record.

The district court found Keppy to be a herder included under this section and found Keppy to have a right to possession of the sows, boars, and offspring in the possession of Keppy at the time of filing. We agree.

There is no question Keppy qualifies as a herder under the statute. Keppy has a lien on the sows, boars, and offspring for all unpaid keeping expenses. Lilienthals are only entitled to possession of the livestock after a bond for twice the amount of the lien claimed is filed. *See* Iowa Code § 584.1, .2 (1991). We find Keppy has a herders' lien, and has properly retained possession of the livestock. We further find there has been no waiver of this lien due to breach since we have already found Keppy did not breach the agreement.

VI. *Damages.* Lilienthals argue the district court should have awarded damages for continued wrongful possession of the livestock during the replevin proceedings. As Lilienthals concede, however, they are not entitled to damages since they were not entitled to possession of the livestock.

**AFFIRMED.**