**Joseph CONNOLLY, III,**
**Plaintiff–Appellant**

v.

**ENTEX INFORMATION SERVICES,**
**INC., a Delaware Corporation**
**Defendant–Appellee**

No. 00–35534.

D.C. No. CV 99–00082–GMK.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 10, 2001.

Decided Dec. 13, 2001.

Before GOODWIN, GREENBERG,[*] and RAWLINSON, Circuit Judges.

### MEMORANDUM [**]

Appellant Joseph A. Connolly III ("Connolly") appeals the district court's grant of summary judgment to Entex Information Services, Inc. ("Entex") in Connolly's disability discrimination action brought pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") and Oregon Revised Statutes § 659.436. Connolly alleged that Entex discharged him from his position as Senior Customer Engineer because of his disability, which consisted of Attention Deficit Disorder ("ADD"), Attention Deficit Hyperactivity Disorder ("ADHD"), depression, and As-

perger's Syndrome, a form of autism. Entex countered that Connolly was terminated for low productivity after numerous warnings and his refusal to transfer to a different job that Entex offered. We affirm the district court's grant of summary judgment in favor of Entex.

Connolly joined the Desktop Support team after performing successfully for the trial period of 120 days in another group, the WinWin team. While in the Desktop Support team, he had several conversations with managers regarding his performance and his failure to close the number of tickets required by the department (approximately 18–20 per week). He was warned that he had to improve his performance. When he pointed to his ADD and switching medications as a source of his problem, his manager suggested that he take a medical leave of absence. Connolly requested a transfer to a "special projects" work group within Desktop Support that did not have a ticket count requirement, but Entex stated that the technicians assigned to that team were the best and most reliable since they functioned independently under a great deal of stress.

On July 9, 1997, Connolly was offered a transfer to the WinWin team doing work group analysis for the same pay and under the same title, but he considered the job as inappropriate for him and "monotonous." According to Entex, the WinWin Group was responsible for converting about 9,000 Intel computers from DOS to Windows NT, and the group performed "migration," a process of standardizing computers, and "analysis," which was surveying the current computer operating environments. Entex states that WinWin technicians did not have a productivity requirement and that the position was less demanding.

[*] The Honorable Morton I. Greenberg, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

[**] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

Connolly felt that the job involved record-keeping and organization which were his areas of weakness and that the temporary nature of the job also made it more undesirable. He interviewed for the position on July 9, 1997, with Jason Bowman, who would be his supervisor and with whom he had worked earlier on the WinWin team with no problems. He was offered the job but turned it down.

Connolly argues that Entex failed to provide reasonable accommodation because it failed to enter the interactive process with him, but Connolly does not show that Entex did not make a good faith effort to provide a reasonable accommodation. Connolly contends that although he has the burden of production on each element of his prima facie case, he does not have the burden of demonstrating any specific reasonable accommodation because it was Entex's burden to enter into the interactive process which Connolly requested. However, according to Connolly, although Entex management did not meet with him in person weekly as he requested, they did e-mail with him and speak with him regularly on the phone and meet with him several times, during which a discussion of reasonable accommodations occurred.

■ Entex offered Connolly a medical leave of absence; reduced the number of tickets assigned to him at one time to two tickets rather than four or five; printed out his tickets; instructed his supervisor to show him how to create reports from REX with information from the tickets; gave him a checklist and binder in which he could take notes and track pertinent data to aid in his record keeping difficulties; agreed to a modified intensive recovery program; and offered him another job in the WinWin group at the same pay and title. Therefore, Connolly did not show that Entex failed to make a good faith effort to assist him in seeking accommodation.

■ Connolly argues that he was not given the reassignment that he desired, but Entex was not required to give him the reassignment of his choice. *See Barnett v. U.S. Air, Inc.,* 228 F.3d 1105, 1110 (9th Cir.2000). The goal is to identify an accommodation that allows the employee to perform the job effectively, not to provide the job of the employee's choice. *See id.* Entex offered Connolly a job in the WinWin group where he had worked previously and performed adequately. Since Connolly had previously demonstrated that he could perform that job effectively, Entex satisfied its accommodation obligation by offering the WinWin position to Connolly.

■ Oregon Revised Statutes § 659.449 provides that Oregon law is to be construed consistently with the federal ADA. Since we have found that Entex did not violate the federal ADA, a similar finding follows as to Connolly's claims under the Oregon statute.

AFFIRMED.