NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0604n.06

No. 11-5063

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Aug 23, 2011*

LEONARD GREEN, Clerk

JOSEPH WHITE,                                    )
                                                 )
    Plaintiff-Appellant,                         )       ON APPEAL FROM THE
                                                 )       UNITED STATES DISTRICT
              v.                               )       COURT FOR THE MIDDLE
                                                 )       DISTRICT OF TENNESSEE
INTERSTATE DISTRIBUTOR CO.,                      )
                                                 )
    Defendant-Appellee.                          )
                                                 )

BEFORE: COLE, ROGERS, and GRIFFIN, Circuit Judges.

ROGERS, Circuit Judge. Plaintiff Joseph White was terminated from his employment at

Defendant Interstate Distributor Co. (Interstate) after Interstate determined that White's leg fracture

and work restrictions prevented him from performing the essential functions of his job. White

claims that Interstate failed to reasonably accommodate him, and failed to engage in an appropriate

interactive process with him, in violation of the Americans with Disabilities Act (ADA), 42 U.S.C.

§§ 12101 to 12213, and the Tennessee Disability Act (TDA), Tenn. Code Ann. §§ 8-50-103 to 104.

The district court granted Interstate's motion for summary judgment, dismissing all of White's

claims, and White appealed. White was not otherwise qualified for his job, with or without

reasonable accommodation, and Interstate engaged in an interactive process to find such reasonable

accommodations. Hence, Interstate did not violate White's rights under the ADA or the TDA.

Interstate hired White for the position of maintenance truck/trailer tech I on July 1, 2008. DE

41 at 1. This position consisted of heavy truck repair work, including repairing and maintaining all

truck parts, working on tires, lifting objects up to eighty pounds, and lifting over forty pounds approximately one third of the work shift. *Id.* at 1-2, 7-8. The lifting work is necessary to the tech position because the tech employee performs brake and starter repair work, tire work, and other work with engine parts that weigh more than twenty pounds. *Id.* at 8.

White was injured on Sunday, July 26, 2009, when a motorcycle fell on and fractured his leg. *Id.* at 2. White contacted his immediate supervisor, Tim Hartley, and Hartley's supervisor, Tim Bernard, to tell them that he would be unable to work the next day. *Id.* White also contacted Mary Johnston of Interstate's human resources department to request leave under the Family and Medical Leave Act (FMLA). *Id.* White then began his FMLA leave. *Id.* at 3.

On September 18, 2009, White received correspondence from Johnston stating that White's available FMLA leave would end on October 16, 2009. *Id.* Johnston's letter also stated that "we would like to begin our interactive process to determine the status of your return to work and to explore any reasonable accommodations that Interstate can make to assist you," and asked White to update Interstate in writing about the status of his return to work and about any requests he had for Interstate to consider reasonable accommodations. *Id.* White contacted Johnston to ask if he could return to work after a doctor's appointment near October 16, 2009; Johnston allowed this. *Id.* at 4.

After examining White, Dr. Cook gave White temporary work restrictions for the period of one to two months. *Id.* at 4-5. These restrictions consisted of: (1) not lifting over twenty pounds or lifting any weight for sixty-seven to one hundred percent of the time, and (2) not climbing or doing any tire or transmission work while these lifting restrictions were in effect. *Id.* Working on tires is an essential function of White's tech position, and two of the physical requirements "that must be

2

met by an employee to perform the essential functions" of the tech position are "lifting between 1-80 lbs." and "the ability to routinely lift above 40 pounds approximately 1/3 of the time." DE 31 at 1. Dr. Cook expected White's leg to heal normally and that the restrictions would be lifted in one to two months. DE 30-3 at 3-4.

White returned to work at Interstate on October 20, 2009. DE 41 at 6. White gave Dr. Cook's restrictions to Bernard, but did not mention any other physical restrictions. *Id.* Johnston and Bernard testified that they discussed White's restrictions and that Bernard told Johnston that there were no available positions White could perform with those restrictions. *Id.* at 7, 9. White conceded that he could not perform all the duties of the tech position, and he further admitted that there was nothing Interstate could have done that would have allowed him to perform the tech job duties. DE 30-1 at 22.

Johnston then informed White via telephone on October 21, 2009 that Interstate could not reinstate White to his tech position due to his inability to perform the position's duties under his work restrictions. DE 41 at 9. White told Johnston that he would still be able to decommission trucks under his work restrictions. *Id.* at 9-10. "Decommissioning" is a set of tasks that techs occasionally perform when they are preparing a truck to strip to sell. DE 31 at 2. Decommissioning is not a full-time position at Interstate, and no Interstate employees were ever assigned solely to decommission trucks. *Id.* Decommissioning requires the same physical abilities as the full-time tech position, because in decommissioning trucks, techs perform the same tasks they normally perform, with the additional tasks of removing decals and other equipment from the trucks. *Id.*

Johnston followed up on her phone conversation with White by sending him correspondence dated October 21, 2009. DE 41 at 12. This letter stated that "[t]he purpose of the call was to engage you in an interactive process to determine when you would be able to return to work, if you needed any accommodations, and how [Interstate] could help." *Id.* Johnston then explained that she discussed White's work restrictions with Bernard, and concluded that "[a]t this time, there is no work available that would allow you to return to duty and still meet these restrictions." *Id.* Interstate then terminated White's employment effective October 21, 2009. *Id.*

The undisputed record evidence of this case shows that White was not otherwise qualified for the tech position, as he could not perform the essential functions of his job and he identified no reasonable accommodations that Interstate could have made. Therefore, Interstate did not violate White's rights under the ADA or the TDA.[1] To prevail on his disability claims, White "must show that . . . he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodation . . . ." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996). White can only show that he is "otherwise qualified" if he can show that he can perform the "essential functions" of his job. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010). "Essential functions," in turn, are defined as the "fundamental job duties" of White's job. 29 C.F.R. § 1630.2(n)(1). As the district court noted, "Plaintiff admits that he was unable to perform his assigned tech duties with his medical restrictions." DE 67 at 10. These duties would include "lifting

---

[1] "A claim brought under the THA [Tennessee Handicap Act, now known as the TDA] is analyzed under the same principles as those utilized for the Americans with Disabilities Act ("ADA")." *Sasser v. Quebecor Printing (USA) Corp.*, 159 S.W.3d 579, 584 (Tenn Court. App. 2004). Therefore, except where expressly noted otherwise, the following analysis applies to White's claims under both the ADA and the TDA.

between 1-80 lbs." and "routinely lift[ing] above 40 pounds approximately 1/3 of the time," the listed requirements for the tech position. Clearly, these would be considered the "fundamental job duties" or "essential functions" of the tech position, as the position revolves around heavy truck repair and maintenance. White's admitted inability to perform these duties defeats his claims under the ADA and the TDA.

And though White can still be considered "otherwise qualified" under the ADA if he can perform his job's essential functions with "reasonable accommodations," "[w]hen the employee seeks a reasonable accommodation, [he] must establish that a 'reasonable' accommodation is possible, and bears a traditional burden of proof that she is qualified for the position with such reasonable accommodation." *Hoskins v. Oakland Cnty. Sheriff's Dept.*, 227 F.3d 719, 728 (6th Cir. 2000).[2] As the district court correctly found, White did not establish that any reasonable accommodation existed. White conceded that there was nothing Interstate could have done to enable him to perform his tech job under his medical restrictions. The only "reasonable" accommodation White requested was that he be allowed to decommission trucks. However, decommissioning trucks is only done on an ad hoc, temporary basis, and is not a full-time, permanent position at Interstate. "[A]s part of [plaintiff's] prima facie case, the plaintiff must identify a vacant, funded position for which [plaintiff] was qualified, with or without accommodation, that existed at the time of [plaintiff's] request for reassignment." *Willard v. Potter*, 264 F. App'x 485, 487-88 (6th Cir. 2008).

---

[2]This is true under the ADA, but not under the TDA. Under the TDA, employers do not have to make reasonable accommodations for employees that cannot perform the essential functions of their jobs. "A determination that an accommodation is required for the employee to perform the functions of the job ends the inquiry under Tennessee law, but does not do so under the ADA." *Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 468 n.9 (6th Cir. 1999).

5

White has not done this, and the ADA does not require Interstate to turn "decommissioning" into a full-time position in order to "reasonably" accommodate him. *See Brown v. Chase Brass & Copper Co.*, 14 F. App'x 482, 488 (6th Cir. 2001); *Hoskins*, 227 F.3d at 729.

White argues that genuine issues of material fact exist on this issue. He claims that a credibility dispute exists between the parties as to whether he could perform decommissioning under his medical restrictions, and as to whether decommissioning jobs existed at Interstate. "Could a reasonable trier of fact legitimately resolve this fact issue in favor of either Mr. White [or] the defendant's management team? Absolutely; someone is right, and the other wrong." Appellant's Br. at 13-14. White, however, cannot create a genuine issue of material fact and defeat summary judgment merely by summarily denying Interstate's arguments when those arguments are backed with record evidence. "So long as the movant has met its initial burden of demonstrat[ing] the absence of a genuine issue of material fact, the nonmoving party then must set forth specific facts showing that there is a genuine issue for trial." *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989). Interstate has presented affirmative evidence showing that decommissioning was not a regular, full-time position. White has offered no affirmative evidence of his own to rebut this showing. Thus, even if there is a genuine dispute over White's ability to perform the decommissioning work, the dispute is not material to his claim and does not defeat summary judgment.

The district court also correctly concluded that Interstate satisfied the ADA's requirement for engaging in an interactive process with White regarding possible reasonable accommodations. Under the ADA, "to determine the appropriate reasonable accommodation for a given employee, it

may be necessary for the employer to initiate an informal, interactive process with the employee." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007). As the district court found, the undisputed record evidence shows that Johnston spoke with White and Bernard about White's restrictions and about any possible accommodations that Interstate could make for White in light of these restrictions. Although this interactive process only occurred over the phone, the ADA does not require that an in-person meeting occur, provided that the interaction is otherwise satisfactory. *Wilkerson v. Shinseki*, 606 F.3d 1256, 1266 (10th Cir. 2010); *Connolly v. Entex Information Servs., Inc.*, 27 F. App'x 876, 878 (9th Cir. 2001). Given Johnston's discussion with both White and Bernard about White's medical restrictions, and the fact that White only suggested one accommodation, Interstate's interaction with White was satisfactory. This is so even assuming, as White claims, that Johnston told him during their discussions that he needed to be "100%" to return to work and that Barnett said a decommissioning job did not exist, as White offered no evidence showing that Interstate could have reasonably accommodated him but for its alleged lack of good faith in the interactive process. *See, e.g.*, *Trout v. Aerospace Testing Alliance*, 303 F. App'x 272, 274 n.1 (6th Cir. 2008); *Denczak v. Ford Motor Co.*, 215 F. App'x 442, 446 (6th Cir. 2007); *Breitfelder v. Leis*, 151 F. App'x 379, 386 (6th Cir. 2005).

Finally, White argues that a genuine issue of material fact exists with respect to whether Interstate regarded him as being disabled. His argument is not persuasive. An individual could indeed be considered disabled under the ADA if he was "being regarded" by his employer as having "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A), (C). However, no matter what White may be able to prove about how

7

Interstate perceived his physical condition, White cannot establish a "regarded as disabled" claim with his impairments because the ADA explicitly states that the "regarded as" definition "shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less." *Id.* at § 12102(3)(B). There is no question that White's impairments are transitory, as his doctor expected his restrictions to be in effect for only a month or two. White's "regarded as disabled" argument fails as a matter of law.

The judgment of the district court is affirmed.