# IN THE COURT OF APPEALS OF IOWA

No. 13-1239
Filed November 26, 2014

**TODD MANN,**
        Plaintiff-Appellant,

**vs.**

**THE STATE OF IOWA, THE IOWA
DEPARTMENT OF CORRECTIONS, THE
LARY NELSON CENTER OF CEDAR RAPIDS,
JOHN BALDWIN, Director of the Iowa
Department of Corrections, in his
individual capacity, and BOBBIE PETERS,
Director of the Lary Nelson Center, in her
official capacity and in her individual capacity,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Polk County, Robert J. Blink,

Judge.


        A former inmate appeals the denial of his claim the Iowa Department of

Corrections violated the Americans with Disabilities Act. **AFFIRMED.**


        Thomas Hurd of Glazebrook, Moe, Johnston & Hurd, L.L.P., Des Moines,

for appellant.

        Thomas J. Miller, Attorney General, and William A. Hill, Assistant Attorney

General, Special Litigation Division, Des Moines, for appellees.


        Heard by Danilson, C.J., and Doyle and Tabor, JJ.

**TABOR, J.**

Former inmate Todd Mann claims the Iowa Department of Corrections violated Title II of the Americans with Disabilities Act by denying him placement in a work release program because he had surgery scheduled to treat a brain aneurysm. Because we conclude Mann did not establish he had an actual disability or a perceived disability under the ADA definitions, we affirm the district court's rejection of his claim.

## I.      Background Facts and Proceedings

In this appeal, Mann identifies his brain aneurysm, or more particularly his anterior communication artery aneurysm, as the physical impairment which qualifies him for protection under the ADA. Mann learned of his condition in June 2009 when he had an MRI following a car accident.

Later that same year, Mann was arrested for operating while intoxicated (OWI). Mann acknowledged in his testimony he had a substance abuse problem and estimated he had been arrested for OWI as many as nine times. On December 16, 2009, Mann entered a plea of guilty to third-offense OWI. The district court sentenced him to a prison term not to exceed five years and placed him in the custody of the Iowa Department of Corrections (DOC). The sentencing court ordered Mann to report to the Lary Nelson Center (LNC), a work-release facility.

The next day, December 17, Mann reported to the LNC, where he met with probation officer Marge Washburn. Mann told Washburn he had a brain aneurysm and was due to have surgery in a couple weeks. After speaking to

Mann, Washburn met with LNC manager Bobbie Peters. Peters testified she believed Mann's scheduled brain surgery was "a critical health issue." Because the LNC did not provide transportation to and from University Hospitals or after-care follow-up, Peters did not believe Mann was "an appropriate placement" for the facility. Peters recommended Washburn call Margot Bilanin, who oversaw transfer requests for the DOC.

On December 18, 2009, Bilanin authorized Mann's transfer to the Iowa Medical and Classification Center (IMCC). Bilanin testified the DOC was concerned about Mann's safety in the LNC and the lack of medical staff at the facility. The transfer to the IMCC had the effect of terminating Mann's placement at the LNC. The transfer order noted the offender could appeal the decision, but must do so within seventy-two hours of receiving notice. According to the DOC policy regarding work release and OWI placements, the DOC could rescind the transfer decision within twenty days and return Mann to the LNC. After that time, according to Bilanin's testimony, only the Iowa Board of Parole[1] could return Mann to the OWI residential placement. The time period for the DOC to reconsider Mann's placement expired on January 9, 2010, and the decision regarding any potential return to the LNC then became the responsibility of the Board of Parole.

Less than one month after his transfer to the IMMC, Mann underwent the first of two procedures at the neurology department of University Hospitals. On January 7, 2010, Mann met with Dr. Hasan who recommended continued

---

[1] Mann did not name the Board of Parole as a defendant.

observation of the aneurysm. But Mann insisted on proceeding with an intervention that would attempt to "stent and coil" the aneurysm. That surgery took place later in January and was unsuccessful. Mann underwent a more invasive procedure on February 8, 2010. Surgeons performed a right pterional craniotomy and aneurysm clipping. According to the parties' stipulation, "[a]fter the operation an angiogram was performed to ensure adequate closure and obliteration of the aneurism." Mann was admitted to the hospital after surgery. He suffered a postoperative seizure, but an EEG "was negative." He was discharged from the hospital on February 10, 2010. Mann returned to the neurology department for a follow-up visit on February 25, 2010, that included the removal of his sutures. At that time, Dr. Hasan noted the incision was "well healed" and Mann was "neurologically intact." The doctor cleared Mann to work without restrictions.

In March 2010, the DOC transferred Mann to the Newton Correctional Facility. His request for parole later that year was turned down by the board of parole because he had not completed the required substance abuse treatment. The board again denied Mann parole in July 2011 following his suicide attempt. Mann was released from prison on Christmas Day 2011.

Mann filed an initial complaint in the Iowa district court on March 5, 2012.[2] On November 26, 2012, he filed an amended and substituted complaint which

---

[2] Mann named the following defendants: John Baldwin, director of the Iowa Department of Corrections; Terry Mapes, warden of the Newton Correctional Facility; Dan Craig, warden of the Iowa Medical & Classification Center; and Bobbi Peters, director of the Lary Nelson Center. On April 12, 2012, Assistant Attorney General William Hill entered

named the State of Iowa, the Department of Corrections, and the Lary Nelson Center as defendants. The amended complaint alleged a claim under Title II of the ADA, as well as other grounds for relief. Mann asked for monetary damages as allowed under Title II.

The State moved for summary judgment, alleging, among other things, that Mann could not establish a cause of action for an alleged violation of his rights under the ADA. On April 8, 2013, the court denied the State's motion for summary judgment, finding a genuine issue of material fact existed "as to the rationale for transferring Petitioner back to the Oakdale facility following a disqualification for treatment at an OWI facility."

On May 6, 2013, the court held a bench trial on Mann's ADA claim. At the start of the trial, the parties submitted a written stipulation to the court. The stipulation traced Mann's medical diagnosis and treatment for "an anterior communicating artery aneurism." At trial, testimony was offered from four witnesses: Mann, Bilanin, Peters, and Virgil Gooding, a licensed social worker who treated Mann for paranoid schizophrenia and post-traumatic stress disorder.

The court dismissed Mann's petition on July 3, 2013, concluding Mann failed to prove a violation of the ADA. Mann filed a motion to enlarge under Iowa Rule of Civil Procedure 1.904(2), asking—among other things—for the court to amend its conclusions of law to find he suffered from a "disability" in form of a brain aneurysm, mental illness, or both. The court denied the motion, expressing

an appearance on behalf of the four employees of the Iowa Department of Corrections. Mann later dismissed his claim against Mapes and Craig.

confidence in its findings "regarding the lack of reliable expert testimony concerning Plaintiff's mental condition." Mann now appeals.

## II.     Standard of Review

We review the judgment following a bench trial for correction of legal errors. *Hansen v. Seabee Corp.*, 688 N.W.2d 234, 237 (Iowa 2004). The district court's findings have the same force as a jury verdict and are binding on review if supported by substantial evidence. *Keppy v. Lilienthal*, 524 N.W.2d 436, 438 (Iowa Ct. App. 1994). We are not bound by the trial court's determinations of law nor are we precluded from examining whether the court applied erroneous rules of law that materially affected its decision. *Chariton Feed & Grain, Inc. v. Harder*, 369 N.W.2d 777, 782 (Iowa 1985).

## III.    Analysis of Mann's claims

### A. Did district court disregard the parties' stipulation?

As an opening salvo, Mann claims the district court erred in holding it was not bound by the parties' medical stipulation and was free to reject components of the stipulation if they were not supported by the evidence presented at trial. We will dispense with this ancillary claim before addressing Mann's main contention concerning protection under the ADA.

Before trial, the parties signed a one-page "medical stipulation" which detailed the history of Mann's aneurysm, starting with his June 2009 automobile accident and proceeding through his surgical treatments in 2010. The district court did not discuss the stipulation in its judgment dismissing Mann's claim. In Mann's rule 1.904(2) motion, Mann cited to the stipulation twice: first in reference

to the existence of his brain aneurysm, first diagnosed in June 2009, and second to assert the surgery was elective.

The district court, in denying Mann's motion, stated:

Parenthetically, this Court is not persuaded that it is compelled to accept as a verity all factual components of a stipulation between counsel if convinced some components are inconsistent with other facts in the record or because the stipulation lacks pertinent facts that should otherwise have been put in the record but were not as the result of the Plaintiff's failure of proof.

Mann argues it is not the role of the trial court to reject the parties' stipulation. To support his argument, Mann relies on *Automobile Underwrites Corp. v. Harrelson*, 409 N.W.2d 688, 691 (Iowa 1987) (citing 9 J. Wigmore, *Evidence in Trials at Common Law* § 2592, at 592 (3d ed. 1940)).

Mann's argument regarding the stipulation has no bearing on our resolution of this case. Regardless of the district court's "parenthetical" assertion, it did not reject the parties' stipulation in its ruling. The court acknowledged Mann had a brain aneurysm and elected surgical intervention to treat it. The district court wrote: "The first surgery was noninvasive, done using placement of a coil in the area of his brain aneurysm through a vein in his leg. If that procedure was not effective, invasive surgery would take place . . . [Mann] willingly and enthusiastically elected the surgical course." We find no error in the district court's consideration of the stipulation.

### B. Did Mann prove he qualified for ADA protection?

Mann brings his claim under Title II of the ADA, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. State prisoners who have disabilities are protected by Title II of the ADA.[3] *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998).

> The ADA defines a "qualified individual" as
>
> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for . . . the participation in programs or activities provided by a public entity.

42 U.S.C.A. § 12131.

To make out a prima facie case under Title II of the ADA, Mann must show (1) he is an individual with a disability, (2) he is otherwise qualified to participate in or receive the benefit in question, (3) he was excluded from participation in the program, and (4) such exclusion was by reason of his disability. *See Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982, 985 (9th Cir. 2014).

---

[3] Although the doctrine of sovereign immunity shields the state from many suits for monetary damages, the United States Supreme Court held that to the extent Title II of the ADA creates a private cause of action against a state for damages stemming from conduct that actually violates the fourteenth amendment, Title II validly abrogates state sovereign immunity. *United States v. Georgia,* 546 U.S. 151, 159, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006) (holding that a disabled inmate at a state penitentiary may sue a state for damages under Title II of the ADA); *see also Dohmen v. Iowa Dep't for the Blind*, 794 N.W.2d 295, 305 (Iowa Ct. App. 2010) (discussing *Georgia* analysis). The State does not raise an issue of sovereign immunity on appeal, nor does the State challenge Mann's ability to bring his claim in state court.

The ADA defines "disability" three ways: "(A) a physical or mental impairment that substantially limits[4] one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The ADA does not define physical impairment. But a regulation promulgated by the Equal Employment Opportunity Commission defines the term to cover "[a]ny physiological disorder, or condition . . . affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, [or] digestive . . . ." 29 C.F.R. § 1630.2(h)(1) (2006) (amended in 2011). The ADA provides a non-exhaustive list of major life activities, including "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

The alternative of "being regarded as" disabled under section 12102(1)(C) is explained as follows:

> (A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

---

[4] In 2008, Congress amended the ADA in response to several United States Supreme Court decisions which "narrowed the broad scope of protection intended to be afforded by the ADA." Pub. L. No. 110–325, § 2(a)-(b)(5), 122 Stat. 3553, 3554 (2008). The amendments declared the term "substantially limits" was not as high a standard as "significantly restricted." *Id.*

(B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor.  A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

42 U.S.C. § 12102(3).

In this appeal, Mann argues his brain aneurysm—at the time he spoke with Marge Washburn—was a physical impairment[5] that substantially limited a major life activity or, alternatively, that the DOC regarded him as having such an impairment.  He claims under either alternative the State wrongly denied him participation in the work release program based on his disability.  After reviewing the evidence presented at trial, we are unable to find support for either of Mann's alternative arguments to show he is an individual with a disability.

### 1.  No actual disability

Turning to the first alternative, Mann alleges he offered evidence the DOC terminated his placement at the work release center because of his brain aneurysm.  On appeal, he alleges the brain aneurysm was a physiological condition that affected his neurological system and substantially limited his ability to work or care for himself.

The record does not support Mann's allegation of an actual disability.  The medical stipulation established Mann had a brain aneurysm, but it did not explain

---

[5] At trial, Mann argued his mental illnesses also constituted a qualifying disability under the ADA.  The district court decided "for the sake of this ruling" that Mann's mental health issues brought him "in the purview of ADA protection.  On appeal, Mann abandons his reliance on mental health issues and argues the district court erred in "not expressly addressing Plaintiff's claim that he was disabled under the ADA due to his brain aneurysm."

the effects of that condition on his neurological system.[6]  Mann testified that in 2009, the doctor treating his aneurysm advised he could "live with it" but should have it checked every two years.  Instead Mann elected to have surgery to fix the aneurysm.  Mann presented no proof his aneurysm limited his ability to work or care for himself.  Mann testified that before starting his OWI sentence he was collecting social security, but was allowed to work up to twenty hours every week.  Mann did not tell the LNC staff he was limited in his ability to work or care for himself.  Instead he reported he was scheduled for a surgical procedure within a couple weeks to address his condition.  Even construing the ADA definition of disability in favor of broad coverage, Mann's condition did not fall within its protection.  Mann did not offer evidence to show the brain aneurysm posed any limit, much less a substantial limit, on a major life activity.  *See Kruger v. Hamilton Manor Nursing Home*, 10 F. Supp. 3d 385, 390 (W.D.N.Y. 2014) (observing short-term restrictions are generally not "substantially limiting" for purposes of the ADA).  Accordingly, he failed to prove an actual disability under the ADA.  *See St. Martin v. City of St. Paul*, 680 F.3d 1027, 1032 (8th Cir. 2012) (finding plaintiff did not show actual disability from knee injury requiring surgery when he was medically cleared to work).

---

[6] Medical records attached to the stipulation did state that Mann "presented in January [2010] with a sharp headache and numbness in his left arm."  But as the district court noted, at trial Mann was insistent that the aneurysm was "no big deal" and "the surgery was not really something he needed or wanted to pursue."

### 2. No perceived disability

Pivoting to the second alternative, Mann claims if he did not actually have a disability, the DOC nevertheless perceived that he did when prison officials transferred him out of the work release center before his scheduled surgery.

Under the ADA, Mann would meet the requirement of "being regarded as" having an impairment if he presented evidence to show the DOC disqualified him from the work release program because of an actual or perceived impairment, whether or not that impairment actually limits or is believed to limit a major life activity. *See Hilton v. Wright*, 673 F.3d 120, 129 (2nd Cir. 2012) (discussing section 12102(3)(A)). But the "regarded as" category does not apply to impairments that are "transitory and minor." 42 U.S.C. § 12102(3)(B). The ADA does not define minor, but does define transitory as "having an actual or expected duration of six months or less." *Id.*; *see Kruger*, 10 F. Supp. 3d at 390 (rejecting claim plaintiff was "regarded as" disabled because broken arm limited her activities for less than six months).

Here, Mann pinpoints the time of discrimination as the DOC's transfer order on December 18, 2009. The evidence shows DOC officials based their decision on Mann's report at the LNC intake that he was scheduled for brain surgery, and not on the mere existence of his aneurysm. Mann stipulated that Dr. Hasan cleared him for work without restrictions at his post-surgery, follow-up visit on February 25, 2010.[7] The duration of Mann's actual or perceived

---

[7] By the time Dr. Hasan pronounced Mann was healed, Mann's fate was in the hands of the Board of Parole—not the DOC—as the twenty-day time period for the DOC to

impairment was just over two months. Under section 12102(3)(B), the "regarded as" disabled category does not apply to Mann's alleged impairment. *See White v. Interstate Distrib. Co.,* 438 Fed. Appx. 415, 420 (6th Cir. 2011) (finding plaintiff could not prove "regarded as" disabled claim because doctor explained his restrictions following leg fracture would be in effect for only a month or two); *Snider v. U.S. Steel-Fairfield Works Med. Dep't*, No. 2:12-CV-3508-AKK, 2014 WL 2590430, at *4 (N.D. Ala. June 10, 2014) (finding plaintiff's alleged impairment was "transitory and minor" because he was cleared for work less than six months after being placed on medical leave).

Because Mann failed to establish he had a disability within the ADA definitions—the first element of his prima facie case—the district court properly denied him relief.[8] We need not address either his assertion that the State failed to show how admitting him to the LNC would have fundamentally altered the work release program or his request for damages.

**AFFIRMED.**

---

rescind the transfer from the LNC had expired. Because Mann did not name the Board of Parole as a defendant in his suit, its decisions are not at issue here.

[8] Although the district court did not rely on this ground to reach its decision, we may affirm the district court on any basis appearing in the record and urged by the prevailing party. *See In re Estate of Voss*, 553 N.W.2d 878, 879 n.1 (Iowa 1996). The State urged at the trial and on appeal that Mann did not prove his prima facie case under the ADA.